**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSY SAARLOOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE COWBOY CHANNEL, LLC,<br><br>Defendant. | Case No. 5:24-cv-2058-KK-SP<br><br>**DECLARATION OF MAX S. ROBERTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**<br><br>Date:          March 27, 2025<br>Time:          9:30 a.m.<br>Courtroom:  3<br>Judge:        Hon. Kenly Kiya Kato |

I, Max S. Roberts, declare as follows:

1.     I am over the age of 18, and I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  I am an Associate at Bursor & Fisher, P.A., admitted to the Bar of the State of New York.  I have worked on this matter under the direct supervision of L. Timothy Fisher, who is a member of the Bar of this Court and counsel of record for Plaintiff.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.     Attached hereto as **<u>Exhibit 1</u>** is a true and correct copy of the parties' Class Action Settlement Agreement, along with the corresponding exhibits annexed thereto.

3.     Shortly after the commencement of this action, the parties engaged in arm's-length negotiations, across several months, in an effort to resolve this litigation.  During this process the parties exchanged informal discovery, including on issues such as the size and scope of the putative class and certain facts related to the strength of Defendant's defenses.  The parties agreed on the principal material terms of this settlement on December 16, 2024, and thereafter spent substantial time working together on a long form settlement and consulting with a reputable claims administrator, Simpluris, on a notice plan.  Attorneys' fees were negotiated only after agreement was reached on all material terms of the settlement.

4.     The resulting proposed Settlement of up to $1,000,000 secures extraordinary relief for the class.  Based on Defendant's records, there are as many as 155,000 people in the proposed Settlement Class.

5.     Plaintiff has been an active participant in the litigation.  She investigated the matter prior to and after retaining her respective attorneys, participated in the plaintiff vetting process implemented by Plaintiff's counsel, reviewed and approved the Complaint, kept in contact with counsel to monitor the progress of the litigation, and reviewed and communicated with her counsel regarding the Settlement

Agreement and its exhibits.

6.    Plaintiff has also provided valuable insight and useful facts allowing Class Counsel to effectively litigate this action and negotiate this Settlement. Plaintiff regularly communicated with Class Counsel regarding various issues pertaining to this case and will continue to do so until the Settlement is approved and its administration completed.

7.    My firm fully endorses the settlement as fair, reasonable, adequate, and in the best interests of the class.  My firm, Bursor & Fisher, P.A., is qualified and experienced in conducting class action litigation.  My firm has vigorously prosecuted this action and will continue to do so through final approval.  A copy of my firm's resume is attached hereto as **Exhibit 2**.

8.    In particular, my firm has extensive experience litigating class actions under the VPPA and its state-law analogs, where we have been appointed class counsel and secured sizable relief for class members.  *See, e.g.*, *Edwards v. Hearst Commc'ns, Inc.*, Case No. 1:15-cv-09279-AT, ECF No. 314 (S.D.N.Y. Apr. 24, 2019) (granting final approval of $50 million class settlement brought under the Michigan analog of the VPPA, one of the largest data privacy settlements ever); *Ruppel v. Consumers Union of United States, Inc.*, Case No. 7:16-cv-02444-KMK, ECF No. 111 (S.D.N.Y. Dec. 4, 2018) (granting final approval of $16.375 million class settlement brought under the Michigan analog of the VPPA); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 1:15-cv-05671-NRB, ECF No. 143 (S.D.N.Y. Mar. 6, 2019) (granting final approval of $13.75 million class settlement brought under the Michigan analog of the VPPA); *Kain v. The Economist Newspaper NA, Inc.*, Case No. 4:21-cv-11807, ECF No. 34 (E.D. Mich. Mar. 16 2023) (granting final approval of $9.5 million class settlement brought under the Michigan analog of the VPPA); *Taylor v. Trusted Media Brands, Inc.*, Case No. 7:16-cv-01812-KMK, ECF No. 87 (S.D.N.Y. Feb. 1, 2018) (granting final approval for $8.225 million class settlement brought under the Michigan analog

of the VPPA); *Moeller v. American Media, Inc.*, Case No. 5:16-cv-11367-JEL, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (granting final approval of $7.6 million class settlement brought under the Michigan analog of the VPPA). Notably, in *Hearst*, we secured a victory on summary judgment for the named plaintiff. *See generally Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017).

9.      In addition, my firm has also been recognized by courts across the country for its expertise. *See generally* Ex. B; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008."); *Williams v. Facebook, Inc.*, Case No. 3:18-cv-01881, ECF No. 51 (N.D. Cal. June 26, 2018) (appointing Bursor & Fisher as class counsel to represent a putative nationwide class of all persons who installed the Facebook Messenger application and granted Facebook permission to access their contact list).

10.     Moreover, my firm has served as trial counsel for class action plaintiffs in six jury trials and has won all six, with recoveries ranging from $21 million to $299 million. Most recently, in May 2019, we secured a jury verdict for over $267 million in a Telephone Consumer Protection Act ("TCPA") case in the Northern District of California. *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020). During the defendant's appeal of the verdict, the case settled for $75.6 million, the largest settlement in the history of the TCPA.

11.     The Parties negotiated and ultimately reached the terms of the Settlement through the assistance of experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's-length.

12.     Plaintiff and proposed Class Counsel recognize that despite our belief in

the strength of Plaintiff's claims, and Plaintiff and the Class' ability to ultimately secure a favorable judgment at trial, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain.

13.    Further, to the best of my knowledge, while numerous putative class actions have been brought under the VPPA, no plaintiff has prevailed on a contested class certification motion, and none have survived summary judgment.  On the contrary, the only VPPA case to ever reach that stage has lost on both motions.  *In re Hulu Priv. Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014) (denying class certification of VPPA claim); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015).  And, to even get to those stages, the Parties would have to undergo significant motion practice and expensive, expansive, and technologically intensive discovery.  Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits as well as on class certification.

14.    Finally, even if Plaintiff prevailed on her VPPA claim at trial, statutory damages under the VPPA are discretionary, meaning that even a total victory could result in zero recovery for the Class.

15.    Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.

16.    Plaintiff and proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 7, 2025, in New York, New York.

Max S. Roberts

**EXHIBIT 1**

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LINDSY SAARLOOS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE COWBOY CHANNEL, LLC,

Defendant.

Case No. 5:24-cv-02058-KK-SP

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Plaintiff, Lindsy Saarloos ("Plaintiff"); (ii) the Settlement Class (as defined herein); and (iii) Defendant, The Cowboy Channel, LLC ("Defendant"). The Settlement Class and Plaintiff are collectively referred to as the "Plaintiffs" unless otherwise noted. The Plaintiff and the Defendant are collectively referred to herein as the "Parties." This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

**A.**      This putative class action was filed on September 25, 2024, in the United States District Court for the Central District of California. The material allegations of the complaint center on Defendant's alleged disclosure of its subscribers' personally identifiable information to Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Yahoo Inc. ("Yahoo"), without consent and in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA").  ECF No. 1.

**B.**      On October 18, 2025, the Parties jointly stipulated to extend Defendant's time to respond to Plaintiff's initial Complaint by 30 days, up to and including November 20, 2024.  ECF No. 11.

**C.**      On November 20, 2024, the Parties again jointly stipulated to extend Defendant's time to respond to Plaintiff's initial Complaint by 30 days, up to and including December 20, 2024, as to conserve resources while the Parties explored the possibility of resolution.  ECF No. 15.

**D.**      During this span of time, and in order to competently assess their relative negotiating positions, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, and certain facts related to the strength of Defendant's defenses. Given that the information exchanged was similar to the information that would have been provided in formal discovery related to the issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

**E.**      Over the ensuing weeks, the Parties engaged in additional phases of arms' length negotiations. On December 16, 2024, the Parties reached an agreement on all material terms of a class action settlement and executed a term sheet. The Parties provided notice thereof, pursuant to Local Rule 40-2, on December 18, 2024. ECF No. 17.

**F.**    At all times, Defendant has denied and continues to deny any
wrongdoing whatsoever and has denied and continues to deny that it committed, or
threatened or attempted to commit, any wrongful act or violation of law or duty
alleged in the Action. Nonetheless, taking into account the uncertainty and risks
inherent in any litigation, Defendant has concluded it is desirable and beneficial that
the Action be fully and finally settled and terminated in the manner and upon the
terms and conditions set forth in this Agreement. This Agreement is a compromise,
and the Agreement, any related documents, and any negotiations resulting in it shall
not be construed as or deemed to be evidence of or an admission or concession of
liability or wrongdoing on the part of Defendant, or any of the Released Parties
(defined below), with respect to any claim of any fault or liability or wrongdoing or
damage whatsoever.

**G.**    Plaintiff believes that the claims asserted in the Action against
Defendant have merit and that she would have prevailed at summary judgment
and/or trial. Nonetheless, Plaintiff and Class Counsel recognize that Defendant has
raised factual and legal defenses that present a risk that Plaintiff may not prevail.
Plaintiff and Class Counsel also recognize the expense and delay associated with
continued prosecution of the Action against Defendant through class certification,
summary judgment, trial, and any subsequent appeals. Plaintiff and Class Counsel
have also taken into account the uncertain outcome and risks of litigation, especially
in complex class actions, as well as the difficulties inherent in such litigation.
Therefore, Plaintiff believes it is desirable that the Released Claims be fully and
finally compromised, settled, and resolved with prejudice. Based on their evaluation,
Class Counsel have concluded that the terms and conditions of this Agreement are
fair, reasonable, and adequate to the Settlement Class, and that it is in the best
interests of the Settlement Class to settle the claims raised in the Action pursuant to
the terms and provisions of this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff, the Settlement Class, and each of them, and Defendant, by and through its undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## **AGREEMENT**

1. **DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1    **"Action"** means *Lindsy Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP, pending in the United States District Court for the Central District of California.

1.2    **"Approved Claim"** means a Claim Form submitted by a Settlement Class Member that: (a) is submitted timely and in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) is fully and truthfully completed by a Settlement Class Member with all of the information requested in the Claim Form; (c) is signed by the Settlement Class Member, physically or electronically; and (d) is approved by the Settlement Administrator pursuant to the provisions of this Agreement. To receive a *pro rata* cash payment, each claimant must fill out an attestation that they have or had a subscription to Cowboy Channel Plus (on cowboychannelplus.com) from September 25, 2022 through, and including, October 9, 2024.

1.3    **"Claim Form"** means the document substantially in the form attached hereto as Exhibit A, as approved by the Court. The Claim Form, to be completed by

Settlement Class Members who wish to file a Claim for a payment, shall be available in electronic and paper format in the manner described below.

1.4    **"Claims Deadline"** means the date by which all Claim Forms must be postmarked or received to be considered timely and shall be set as a date no later than forty-five (45) days after entry of the Final Approval Hearing. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order as well as in the Notice and the Claim Form.

1.5    **"Class Counsel"** means L. Timothy Fisher and Yitzchak Kopel of Bursor & Fisher, P.A.

1.6    **"Class Representative"** means the named Plaintiff in this Action, Lindsy Saarloos.

1.7    **"Court"** means the United States District Court for the Central District of California, the Honorable Kenly Kiya Kato presiding, or any judge who shall succeed her as the Judge in this Action.

1.8    **"Defendant"** means The Cowboy Channel, LLC.

1.9    **"Defendant's Counsel"** means Teresa C. Chow and Joel C. Griswold of Baker & Hostetler LLP.

1.10    **"Effective Date"** means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

1.11    **"Escrow Account"** means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to all Parties at a depository institution insured by the Federal Deposit Insurance Corporation. The Settlement Fund shall be deposited by Defendants into the Escrow Account in accordance with the terms of this Agreement and the money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing and maintaining the Escrow Account shall be

paid from the Settlement Fund.  The Escrow Account shall be maintained by the Settlement Administrator.

1.12    **"Fee Award***"* means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

1.13    **"Final"** means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

1.14    **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the incentive award to the Class Representative.

1.15    **"Final Judgment"** means the Final Judgment and Order to be entered by the Court approving the Agreement after the Final Approval Hearing.

1.16    **"Notice"** means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, is consistent with the requirements of Due Process, Rule 23, and is substantially in the form of Exhibits B, C, and D hereto.

1.17    **"Notice Date"** means the date by which the Notice set forth in Paragraph 4.1 is complete, which shall be no later than thirty (30) days after Preliminary Approval.

1.18    **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be made, which shall be designated as a date no later than forty-five (45) days after the Notice Date and no sooner than fourteen (14) days after papers supporting the Fee Award are filed with the Court and posted to the settlement website listed in Paragraph 4.1(d), or such other date as ordered by the Court.

1.19    **"Person"** shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns. "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

1.20    **"Plaintiffs"** means Lindsy Saarloos and the Settlement Class Members.

1.21    **"Preliminary Approval"** means the Court's certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice.

1.22    **"Preliminary Approval Order"** means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and directing notice thereof to the Settlement Class, which will be agreed upon by the Parties and submitted to the Court in conjunction with Plaintiff's motion for preliminary approval of the Agreement.

1.23    **"Released Claims"** means any and all and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, whether based on the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' information which identifies such person as having requested or obtained specific video materials or services from Released Parties to any third party, including all claims that were brought or could have been brought in the Action relating to the disclosure of such information belonging to any and all Releasing Parties. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant.

1.24    **"Released Parties"** means Defendant The Cowboy Channel, LLC, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies (including, but not limited to, Rural Media Group, Inc.), subsidiaries, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.25    **"Releasing Parties"** means Plaintiffs, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns,

1   parent companies, subsidiaries, associates, affiliates, employers, employees, agents,

2   consultants, independent contractors, insurers, directors, managing directors,

3   officers, partners, principals, members, attorneys, accountants, financial and other

4   advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal

5   representatives, successors in interest, assigns and companies, firms, trusts, and

6   corporations.

7       **1.26**   **"Settlement Administration Expenses"** means the expenses incurred

8   by the Settlement Administrator in providing Notice (including CAFA notice),

9   processing claims, responding to inquiries from members of the Settlement Class,

10  mailing checks for Approved Claims, and related services.

11      **1.27**   **"Settlement Administrator"** means Simpluris or such other reputable

12  administration company that has been selected by the Parties and approved by the

13  Court to oversee the distribution of Notice, as well as the processing and payment of

14  Approved Claims to the Settlement Class as set forth in this Agreement.

15      **1.28**   **"Settlement Class"** means all persons in the United States who have or

16  had a subscription to Cowboy Channel Plus from September 25, 2022 through, and

17  including, October 9, 2024. Excluded from the Settlement Class are (1) any Judge or

18  Magistrate presiding over this Action and members of their families; (2) the

19  Defendant, its subsidiaries, parent companies, successors, predecessors, and any

20  entity in which the Defendant or its parents have a controlling interest and their

21  current or former officers, directors, agents, attorneys, and employees; (3) persons

22  who properly execute and file a timely request for exclusion from the class; and (4)

23  the legal representatives, successors or assigns of any such excluded persons.

24      **1.29**   **"Settlement Class Member"** means a Person who falls within the

25  definition of the Settlement Class as set forth above and who has not submitted a

26  valid request for exclusion.

27      **1.30**   **"Settlement Fund"** means the non-reversionary cash fund that shall be

28

---

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

established by or on behalf of Defendant in the total amount of one million dollars ($1,000,000.00 USD) to be deposited into the Escrow Account, according to the schedule set forth herein, plus all interest earned thereon. From the Settlement Fund, the Settlement Administrator shall pay all Approved Claims made by Settlement Class Members, Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement. In no event shall Defendant's total monetary obligation with respect to this Agreement exceed or be less than one million dollars ($1,000,000.00 USD), plus the interest earned on such sum.

1.33  **"Unknown Claims"** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM

OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

2.    **SETTLEMENT RELIEF.**

2.1    **Payments to Settlement Class Members.**

(a)    Defendant shall pay or cause to be paid into the Escrow Account the amount of the Settlement Fund ($1,000,000.00 USD), as specified in Paragraph 1.30 of this Agreement, within thirty-five (35) days following the Effective Date of this Settlement Agreement.  Under no circumstances shall Defendant be required to pay any amount in excess of the Settlement Fund.

(b)    Settlement Class Members shall have until the Claims Deadline to submit an Approved Claim.  Each Settlement Class Member with an Approved Claim shall be entitled to a *pro rata* portion of the Settlement Fund by check after deducting the Settlement Administration Expenses, any Fee Award, and any incentive award.

(c)    The Settlement Administrator shall pay from the Settlement Fund all Approved Claims by check with said checks being sent via first class U.S. mail to the Settlement Class Members who submitted such Approved Claims. Payments to

all Settlement Class Members with Approved Claims shall be made within ninety (90) days after the Effective Date.

(d)    All cash payments issued to Settlement Class Members via check will state on the face of the check that it will expire and become null and void unless cashed within one hundred eighty (180) days after the date of issuance.  To the extent that any checks issued to a Settlement Class Member are not cashed within one hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a *pro rata* basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks during the initial distribution, but only to the extent each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible.  To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall revert to a non-sectarian, not-for-profit organization, agreed upon by Class Counsel and Defendant and approved by the Court.

(e)    Upon payment of the Settlement Fund into the Escrow Account, all risk of loss with respect to the cash portion of the Settlement shall pass to the Escrow Account, and any and all remaining interest or right of Defendant in or to the Escrow Account, if any, shall be extinguished.

3.    **RELEASE.**

3.1    The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

3.2    Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them. Further, upon the Effective Date, and to the

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

fullest extent permitted by law, each Settlement Class Member, shall, either directly,
indirectly, representatively, or in any capacity, be permanently barred and enjoined
from filing, commencing, prosecuting, intervening in, or participating (as a class
member or otherwise) in any lawsuit, action, or other proceeding in any jurisdiction
(other than participation in the Settlement as provided herein) against any Released
Party based on the Released Claims.

**4.      NOTICE TO THE CLASS.**

    **4.1**     The Notice Plan shall consist of the following:

        **(a)**     *Settlement Class List.*  No later than fourteen (14) days after
Preliminary Approval, Defendant shall produce an electronic list from its records
that includes the names, email addresses, and last known U.S. Mail addresses, to the
extent available, belonging to Persons within the Settlement Class.  Class Counsel's
assent to this Agreement shall constitute consent on behalf of the Settlement Class
to disclose this information, consistent with the written consent provisions of the
VPPA.  This electronic document shall be called the "Class List," and shall be
provided to the Settlement Administrator.  Class Counsel shall not use the
Settlement Class List, or any information contained within it, for any other purposes
other than administering the settlement, and shall take reasonable measures to
protect the information from any third-party disclosure.  Class Counsel may not
send advertisements, solicitations, or communications to the Settlement Class to
solicit Class members to retain Class Counsel for any other matters or disputes.

        **(b)**     *Direct Notice.* In the event that the Court preliminarily approves
the Settlement, no later than the Notice Date, the Settlement Administrator shall
send Notice via First Class U.S. Mail and email substantially in the form attached as
Exhibit B and C, along with an electronic link to the Claim Form, to all Settlement
Class Members for whom a valid email address is available in the Class List.  In the
event transmission of email notice results in any "bounce-backs," the Settlement

Administrator shall, where reasonable, correct any issues that may have caused the "bounce-back" to occur and make a second attempt to re-send the email notice.

       **(c)**   *Update Addresses.*  Prior to mailing any Notice, the Settlement Administrator will update the U.S. mail addresses of persons on the Class List using the National Change of Address database and other available resources deemed suitable by the Settlement Administrator.  The Settlement Administrator shall take all reasonable steps to obtain the correct address of any Settlement Class members for whom Notice is returned by the U.S. Postal Service as undeliverable and shall attempt re-mailings.

       **(d)**   *Reminder Notice.*  Both thirty (30) days prior to the Claims Deadline and seven (7) days prior to the Claims Deadline, the Settlement Administrator shall again send Notice via email substantially in the form attached as Exhibit B (with minor, non-material modifications to indicate that it is a reminder email rather than an initial notice), along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is available in the Class List.

       **(e)**   *Settlement Website.* Within ten (10) days from entry of the Preliminary Approval Order, Notice shall be provided on a website at www.cowboychannelvppasettlement.com which shall be administered and maintained by the Settlement Administrator and shall include the ability to file Claim Forms on-line. The Notice provided on the Settlement Website shall be substantially in the form of Exhibit D hereto.

       **(f)**   *CAFA Notice.*  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served upon the Attorneys General of each U.S. State in which Settlement Class members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

        **(g)**    *Contact from Class Counsel.* Class Counsel, in their capacity as counsel to Settlement Class Members, may from time to time contact Settlement Class Members to provide information about the Settlement Agreement and to answer any questions Settlement Class Members may have about the Settlement Agreement.

        **4.2**    The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's CM/ECF system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

        **4.3**    Any Settlement Class Member who intends to object to this Agreement must present the objection in writing, which must be personally signed by the objector, and must include: (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"); and (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either

personally or through counsel who files an appearance with the Court in accordance with the Local Rules).

**4.4**    If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.  Any challenge to the Settlement Agreement, the Final Order, or the Final Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**4.5**    A Settlement Class Member may request to be excluded from the Settlement Class by sending a written request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice. To exercise the right to be excluded, a Person in the Settlement Class must timely send a written request for exclusion to the Settlement Administrator as specified in the Notice, providing his/her name and address, a signature, the name and number of the case, and a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement. A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved. Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The request for exclusion must be personally signed by the Person requesting exclusion. So-called "mass" or "class" opt-outs shall not be allowed. To be valid, a request for exclusion must be

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

postmarked or received by the date specified in the Notice. If more than forty (40) Class Members file timely and valid exclusions, then Defendant shall have the option, but not the obligation, to terminate this Agreement and the Parties shall return to their respective positions prior to the entry of the Agreement.

      **4.6**    The Final Approval Hearing shall be no earlier than ninety (90) days after the Notice described in Paragraph 4.1(e) is provided.

      **4.7**    Any Settlement Class Member who does not, using the procedures set forth in this Agreement and the Notice, either seek exclusion from the Settlement Class or timely file a valid Claim Form shall not be entitled to receive any payment or benefits pursuant to this Agreement, but will otherwise be bound by all of the terms of this Agreement, including the terms of the Final Judgment to be entered in the Action and the Releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

**5.**       **SETTLEMENT ADMINISTRATION.**

      **5.1**    The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning Notice, administration, and implementation of the Settlement Agreement. Should the Court request, the Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts

from the Settlement Fund paid to Settlement Class Members on account of Approved Claims. Without limiting the foregoing, the Settlement Administrator shall:

(a)     Forward to Defendant's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement, and all copies thereof, within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed in accordance with the terms of this Agreement;

(b)     Receive requests to be excluded from the Settlement Class and other requests and promptly provide to Class Counsel and Defendant's Counsel copies thereof. If the Settlement Administrator receives any exclusion forms or other requests after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

(c)     Provide weekly reports to Class Counsel and Defendant's Counsel, including and without limitation, reports regarding the number of Claim Forms received, the number approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected, in whole or in part, by the Settlement Administrator; and

(d)     Make available for inspection by Class Counsel and Defendant's Counsel the Claim Forms received by the Settlement Administrator at any time upon reasonable notice.

5.2     The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud.   The Settlement Administrator will reject any claim that does not comply in any material respect with the instructions on the Claim Form or the terms of Paragraphs 1.2 and/or 1.3, above, or is submitted after the Claims Deadline.  Each claimant who submits an invalid Claim Form to the Settlement Administrator must be given a notice of the Claim Form's deficiency and an

opportunity to cure the deficiency within twenty-one (21) days of the date of the notice. The Settlement Administrator may contact any Person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form.

5.3    Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by Settlement Class Members and to obtain and review supporting documentation relating to such Claim Form. The Settlement Administrator shall follow any agreed decisions of Class Counsel and Defendant's Counsel as to the validity of any disputed submitted Claim Form. To the extent Class Counsel and Defendant's Counsel are not able to agree on the disposition of a challenge, the disputed claim shall be submitted to Judicial Arbitration and Mediation Services, Inc. ("JAMS") for binding determination.

5.4    In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

6.    **TERMINATION OF SETTLEMENT.**

6.1    Subject to Paragraphs 9.1-9.3 below, Defendant or the Class Representative on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within twenty-one (21) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1(d) of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

**6.2**    Subject to Paragraphs 9.1-9.3 below, Defendant shall have the right, but
not the obligation, in its sole discretion, to terminate this Agreement by providing
written notice to Class Counsel within twenty-five (25) days of the following events:
(i) individuals comprising more than three percent (3%) of the Settlement Class in
total have timely and validly opted out of and/or objected to the Agreement; or (ii)
the Class Representative and his agents, or any other individuals operating at his
direction or in coordination with him, or Class Counsel, file or threaten to file any
arbitrations or additional lawsuits against Defendant related to the Released Claims
at any time prior to Final Approval.

**6.3**    If Defendant seeks to terminate the Agreement on the basis of 6.2
above, the Parties agree that any dispute as to whether Defendant may invoke section
6.2 to terminate the Agreement that they cannot resolve on their own after
reasonable, good faith efforts, will be submitted to Judicial Arbitration and
Mediation Services, Inc. ("JAMS") for binding determination.

**6.4**    The Parties agree that the Court's failure to approve, in whole or in part,
the attorneys' fees payment to Class Counsel and/or the incentive award set forth in
Paragraph 8 below shall not prevent the Agreement from becoming effective, nor
shall it be grounds for termination. The procedures for any application for approval
of attorneys' fees, expenses, or Incentive Awards are to be considered by the Court
separately from the Court's consideration of the fairness, reasonableness and
adequacy of the Settlement.

7.    **PRELIMINARY AND FINAL APPROVAL ORDERS.**

**7.1**    Promptly after the execution of this Settlement Agreement, Class
Counsel shall submit this Agreement together with its Exhibits to the Court and shall
move the Court for Preliminary Approval of the settlement set forth in this
Agreement; certification of the Settlement Class for settlement purposes only;
appointment of Class Counsel and the Class Representative; and entry of a
Preliminary Approval Order, which order shall set a Final Approval Hearing date

and approve the Notice and Claim Form for dissemination substantially in the form
of Exhibits A, B, C, and D hereto. The Preliminary Approval Order shall also
authorize the Parties, without further approval from the Court, to agree to and adopt
such amendments, modifications and expansions of the Settlement Agreement and its
implementing documents (including all exhibits to this Agreement) so long as they
are consistent in all material respects with the terms of the Settlement Agreement and
do not limit or impair the rights of the Settlement Class.

    **7.2**    Defendant's agreement as to certification of the Settlement Class is
solely for purposes of effectuating the Settlement and no other purpose.  Defendant
retains all of its objections, arguments, and defenses with respect to class
certification and any other issue, and reserves all rights to contest class certification
and any other issue if the Settlement set out in this Agreement does not result in
entry of the Final Approval Order and Final Judgment, if the Court's approval is
reversed or vacated on appeal, if this Settlement is terminated as provided herein, or
if the Settlement set forth in this Settlement otherwise fails to become effective.  The
Parties acknowledges that there has been no stipulation to any classes or certification
of any classes for any purpose other than effectuating the Settlement, and that if the
Settlement set forth in this Settlement Agreement is not finally approved, if the
Court's approval is reversed or vacated on appeal, if this Settlement Agreement is
terminated as provided herein, or if the Settlement set forth in this Settlement
Agreement otherwise fails to become effective, this agreement as to certification of
the Settlement Class becomes null and void *ab initio*, and this Settlement Agreement
or any other settlement-related statement may not be cited regarding certification of
the Class, or in support of an argument for certifying any class for any purpose
related to this Action or any other proceeding.

    **7.3**  At the time of the submission of this Agreement to the Court as described
above, Class Counsel shall request that, after Notice is given, the Court hold a Final
Approval Hearing and approve the settlement of the Action as set forth herein.

7.4    After Notice is given, the Parties shall request and seek to obtain from the Court a Final Judgment, which will (among other things):

(a)    find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all exhibits thereto;

(b)    approve the Settlement Agreement and the proposed settlement as fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and Releasing Parties;

(c)    find that the Notice implemented pursuant to the Agreement (1) constitutes the best practicable notice under the circumstances; (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement, and to appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

(d)    find that the Class Representatives and Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

(e)    dismiss the Action (including all individual claims and Settlement Class Claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

       **(f)**     incorporate the Release set forth above, make the Release effective as of the date of the Effective Date, and forever discharge the Released Parties as set forth herein; and

       **(g)**     permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the respective Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims.

8.    **CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; INCENTIVE AWARD.**

    **8.1**    Pursuant to Fed. R. Civ. P. 23(h), Defendant agrees that Class Counsel shall be entitled to an award of reasonable attorneys' fees and costs out of the Settlement Fund in an amount determined by the Court as the Fee Award.  With no consideration given or received, Class Counsel will limit its petition for attorneys' fees, costs, and expenses to no more than one-third of the Settlement Fund (i.e., $333,333.33).  Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund for distribution to eligible Settlement Class Members.

    **8.2**    The Fee Award shall be payable within ten (10) days after entry of the Court's Final Judgment, subject to Class Counsel executing the Undertaking Regarding Attorneys' Fees and Costs (the "Undertaking") attached hereto as Exhibit E, and providing all payment routing information and tax ID numbers for Class Counsel. Payment of the Fee Award shall be made by wire transfer to Bursor & Fisher, P.A. in accordance with wire instructions to be provided to the Settlement Administrator by Bursor & Fisher, P.A., and completion of necessary forms,

including but not limited to W-9 forms. Notwithstanding the foregoing, if for any reason the Final Judgment is reversed or rendered void as a result of an appeal(s) then Class Counsel shall return such funds to the Settlement Fund.  Additionally, should any parties to the Undertaking dissolve, merge, declare bankruptcy, become insolvent, or cease to exist prior to the final payment to Settlement Class Members, those parties shall execute a new undertaking guaranteeing repayment of funds within twenty (20) days of such an occurrence.

**8.3**    Class Counsel intends to file a motion for Court approval of an incentive award for the Class Representative, to be paid from the Settlement Fund, in addition to any funds the Class Representative stands to otherwise receive from the Settlement.  With no consideration having been given or received for this limitation, the Class Representative will seek no more than $5,000 as an incentive award. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund for distribution to eligible Settlement Class Members.  Such award shall be paid from the Settlement Fund (in the form of a check to the Class Representative that is sent care of Class Counsel), within thirty (30) days after the Effective Date.

9.    **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

**9.1**    The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

      **(a)**    The Parties and their counsel have executed this Agreement;

      **(b)**    The Court has entered the Preliminary Approval Order;

      **(c)**    The Court has entered an order finally approving the Agreement, following Notice to the Settlement Class and a Final Approval Hearing, as provided

in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

**(d)** The Final Judgment has become Final, as defined above, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and that has the consent of the Parties, such Alternative Judgment becomes Final.

**9.2** If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 6.1 unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, and fails to cure such material breach within 30 days of notice, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Settling Parties.

**9.3** If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1 and 9.1-9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into.

**10.** **MISCELLANEOUS PROVISIONS.**

**10.1** The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to

1  secure final approval, and to defend the Final Judgment through any and all appeals.

2  Class Counsel and Defendant's Counsel agree to cooperate with one another in

3  seeking Court approval of the Settlement Agreement, entry of the Preliminary

4  Approval Order, and the Final Judgment, and promptly to agree upon and execute all

5  such other documentation as may be reasonably required to obtain final approval of

6  the Agreement.

7      **10.2**  The Parties intend this Settlement Agreement to be a final and complete

8  resolution of all disputes between them with respect to the Released Claims by

9  Plaintiff, the Settlement Class and each or any of them, on the one hand, against the

10  Released Parties, and each or any of the Released Parties, on the other hand.

11  Accordingly, the Parties agree not to assert in any forum that the Action was brought

12  by Plaintiff or defended by Defendant, or each or any of them, in bad faith or on a

13  frivolous basis.

14      **10.3**  The Parties have relied upon the advice and representation of counsel,

15  selected by them, concerning their respective legal liability for the claims hereby

16  released. The Parties have read and understand fully the above and foregoing

17  agreement and have been fully advised as to the legal effect thereof by counsel of

18  their own selection and intend to be legally bound by the same.

19      **10.4**  Whether or not the Effective Date occurs or the Settlement Agreement

20  is terminated, neither this Agreement nor the settlement contained herein, nor any act

21  performed or document executed pursuant to or in furtherance of this Agreement or

22  the settlement:

23      **(a)**  is, may be deemed, or shall be used, offered or received against

24  the Released Parties, or each or any of them, as an admission, concession or evidence

25  of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiff,

26  the deficiency of any defense that has been or could have been asserted in the

27  Action, the violation of any law or statute, the reasonableness of the settlement

28

---

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

   **(b)**    is, may be deemed, or shall be used, offered or received against Defendant, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

   **(c)**    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

   **(d)**    is, may be deemed, or shall be construed against Plaintiff, the Settlement Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

   **(e)**    is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff, the Settlement Class, the

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.5   The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.6   The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

10.7   All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

10.8   This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.9   Except as otherwise provided herein, each Party shall bear its own costs.

10.10 Plaintiff represents and warrants that he has not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that he is fully entitled to release the same.

10.11 Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

to the Agreement to effectuate its terms. Class Counsel in particular warrants that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs and the Settlement Class (subject to final approval by the Court after notice to all Settlement Class Members), and that all actions necessary for the execution of this Settlement Agreement have been taken.

10.12 This Agreement may be executed in one or more counterparts. Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.13 This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

10.14 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

10.15 This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California.

10.16 This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

10.17 Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel: L. Timothy Fisher, Bursor & Fisher, P.A., 1990 North California Blvd., 9th Floor, Walnut Creek, CA 94596; Teresa C. Chow, Baker & Hostetler LLP, 1900 Avenue of the Stars, Suite 2700, Los Angeles, CA 90067.

10.18 Plaintiff and/or Class Counsel shall not, at any time, issue press releases or make other public statements regarding the Settlement or the Action (apart from

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

1  filings with the Court as necessary to obtain Preliminary or Final Approval of the

2  Settlement) unless Defendant agrees to such press releases or public statements in

3  advance; provided that Class Counsel may post Court orders regarding the Action

4  and brief summaries of those orders on their website(s) without permission from

5  Defendant, so long as any reference in such order(s) to materials subject to any

6  confidentiality obligations are properly redacted. This provision shall not prohibit

7  Class Counsel from communicating with any person in the Settlement Class

8  regarding the Settlement (subject to compliance with any and all applicable

9  confidentiality obligations).

10 **IT IS SO AGREED TO BY THE PARTIES**:

11 Dated:    01/31/25                          **LINDSY SAARLOOS**

12                                             By: _____
                                               Lindsy Saarloos (Jan 31, 2025 14:13 MST)

13                                             Lindsy Saarloos, individually and as
                                               representative of the Class

14 Dated: 2/3/25                               **THE COWBOY CHANNEL, LLC**

15

16                                             By: Gatsby Solheim  Digitally signed by Gatsby Solheim
                                               Date: 2025.02.03 11:08:51 -06'00'

17                                             Name: Gatsby Solheim

18                                             Title: General Counsel & CFO

19 **IT IS SO STIPULATED BY COUNSEL:**

20 Dated: 01/31/2025                           **BURSOR & FISHER, P.A.**

21                                             By: _____

22                                             L. Timothy Fisher (State Bar No. 191626)
                                               1990 North California Blvd., 9th Floor

23                                             Walnut Creek, CA 94596
                                               Telephone: (925) 300-4455

24                                             Facsimile: (925) 407-2700
                                               E-mail: ltfisher@bursor.com

25
                                               *Class Counsel*
26
   Dated:    02/03/2025                        **BAKER & HOSTETLER LLP**
27

28                                             By: _____

---

CLASS ACTION SETTLEMENT AGREEMENT
CASE NO. 5:24-cv-02058-KK-SP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Teresa C. Chow
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
E-mail: tchow@bakerlaw.com

*Attorney for Defendant*

**EXHIBIT A**

**Saarloos v. The Cowboy Channel, LLC**

In the United States District Court for the Central District of California

Case No. 5:24-cv-02058-KK-SP

## Settlement Claim Form

> **If you are a Settlement Class Member and wish to receive a payment, your completed Claim Form must be postmarked on or before [_____], or submitted online on or before [_____].**

Please read the full notice of this settlement (available at [**hyperlink**]) carefully before filling out this Claim Form.

To be eligible to receive any benefits from the settlement obtained in this class action lawsuit, you must submit this completed Claim Form online or by mail:

**ONLINE:**    Submit this Claim Form.

**MAIL**:        **[ADDRESS]**

### PART ONE:   CLAIMANT INFORMATION

Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form.

|  |  |
|---|---|
| **FIRST NAME** | **LAST NAME** |

**STREET ADDRESS**

|  |  |  |
|---|---|---|
| **CITY** | **STATE** | **ZIP CODE** |

**EMAIL ADDRESS ASSOCIATED WITH YOUR COWBOYCHANNELPLUS.COM ACCOUNT**

### PART TWO:   PAYMENT SELECTION

You may be eligible to receive a *pro rata* cash payment if you have or had a subscription to Cowboy Channel Plus (on cowboychannelplus.com) from September 25, 2022 through, and including, October 9, 2024.

Please select **one** of the following payment options:

Check        ☐

Venmo        ☐    Venmo Username: _____

PayPal       ☐    PayPal Email: _____

QUESTIONS? VISIT [hyperlink] OR CALL [NUMBER] TOLL-FREE

**PART THREE: ATTESTATION UNDER PENALTY OF PERJURY**

I declare under penalty of perjury under the laws of the United States of America that I have or had a
subscription to Cowboy Channel Plus (on cowboychannelplus.com) from September 25, 2022 through, and
including, October 9, 2024, and that all of the information on this Claim Form is true and correct to the best of
my knowledge.  I understand that my Claim Form may be subject to audit, verification, and Court review.

|  |  |
|---|---|
| **SIGNATURE** | **DATE** |

**Please keep a copy of your Claim Form for your records.**

**EXHIBIT B**

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

# OUR RECORDS INDICATE YOU HAVE SUBSCRIBED TO COWBOY CHANNEL PLUS AND MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

Cowboy Channel VPPA Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

|||||||||||||||||||||||
Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

A settlement has been reached in a class action lawsuit claiming that Defendant, The Cowboy Channel, LLC, disclosed its subscribers' personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Yahoo Inc. ("Yahoo"), without consent and in violation of the Video Privacy Protection Act (the "VPPA"). The VPPA defines PII to include information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider.  Defendant denies that it violated any law, but has agreed to the settlement to avoid the uncertainties and expenses associated with continuing the case.

**Am I a Class Member?** Our records indicate you may be a Class Member. Class Members are all persons in the United States who, from September 25, 2022, to and through October 9, 2024, have or had a subscription to Cowboy Channel Plus (on cowboychannelplus.com).

**What Can I Get?** If approved by the Court, Defendant will establish a Settlement Fund of $1,000,000.00 to pay all valid claims submitted by the Settlement Class, together with notice and administration expenses, attorneys' fees and costs, and an incentive award. If you are entitled to relief, you may submit a claim to receive a *pro rata* share of the Settlement Fund.

**How Do I Get a Payment?** You must submit a timely and complete Claim Form **no later than [claims deadline]**. You may submit a Claim Form either electronically on the Settlement Website by visiting [insert hyperlink], or by printing and mailing in a paper Claim Form, copies of which are available for download at the Settlement Website. Your payment will come by check unless you elect to receive payment electronically by PayPal or Venmo.

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the settlement administrator no later than [objection/exclusion deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed no later than [objection/exclusion deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [www.cowboychannelvppasettlement.com].  If you file a claim or do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to Defendant's alleged disclosure of subscriber information to any third party will be released.

**Who Represents Me?** The Court has appointed lawyer L. Timothy Fisher and Yitzchak Kopel of Bursor & Fisher, P.A. to represent the class. This attorney is called Class Counsel. You will not be charged for this lawyer. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at _____.m. on [date] in Courtroom 3 at the George E. Brown, Jr. U.S. Courthouse, 3470 Twelfth Street, Riverside, CA 92501. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representative $5,000 from the Settlement Fund for her service in helping to bring and settle this case. Defendant has agreed to pay Class Counsel reasonable attorneys' fees in an amount to be determined by the Court. Class Counsel is entitled to seek no more than one-third of the Settlement Fund, but the Court may award less than this amount.

**How Do I Get More Information?**  For more information, including the full Notice, Claim Form and Settlement Agreement go to www.cowboychannelvppasettlement.com, contact the settlement administrator at 1-___-___-____ or Cowboy Channel VPPA Settlement Administrator, [address], or contact Class Counsel at info@bursor.com.

Cowboy Channel VPPA Settlement Administrator
c/o [Settlement Administrator]
PO Box 0000
City, ST 00000-0000

XXX

**EXHIBIT C**

From:  Administrator@<mark>cowboychannelvppasettlement.com</mark>
To:      JonQClassMember@domain.com
Re:     Legal Notice of Class Action Settlement

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
*Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP
**(United States District Court for the Central District of California)**

**Our Records Indicate You Have Subscribed to *Cowboy Channel Plus* and May Be Entitled to a Payment From a Class Action Settlement.**

*A court authorized this notice.  You are <u>not</u> being sued.  This is <u>not</u> a solicitation from a lawyer.*

This notice is to inform you that a settlement has been reached in a class action lawsuit claiming that Defendant, The Cowboy Channel, LLC, disclosed its subscribers' personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Yahoo Inc. ("Yahoo"), without consent and in violation of the Video Privacy Protection Act (the "VPPA"). The VPPA defines PII to include information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider. Defendant denies that it violated any law, but has agreed to the settlement to avoid the uncertainties and expenses associated with continuing the case.

**<u>Am I a Class Member?</u>** Our records indicate you may be a Class Member. Class Members are all persons in the United States who, from September 25, 2022, to and through October 9, 2024, have or had a subscription to Cowboy Channel Plus (on cowboychannelplus.com).

**<u>What Can I Get?</u>** If approved by the Court, Defendant will establish a Settlement Fund of $1,000,000.00 to pay all valid claims submitted by the Settlement Class, together with notice and administration expenses, attorneys' fees and costs, and an incentive award.  If you are entitled to relief, you may submit a claim to receive a *pro rata* share of the Settlement Fund, estimated at $<mark>[]</mark> per class member.

**<u>How Do I Get a Payment?</u>** You must submit a timely and complete Claim Form **no later than [<mark>claims deadline</mark>]**. You can file a claim by clicking [<mark>here</mark>.] Your payment will come by check unless you elect to receive payment electronically by PayPal or Venmo.

**<u>What are My Other Options?</u>** You may exclude yourself from the Class by sending a letter to the settlement administrator no later than [**<mark>objection/exclusion deadline</mark>**]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed no later than [**<mark>objection/exclusion deadline</mark>**]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at <mark>www.cowboychannelvppasettlement.com</mark>.  If you file a claim or do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged disclosure to any third party

of information identifying you as having requested or obtained specific video materials or services from Defendant will be released.

**<u>Who Represents Me?</u>** The Court has appointed lawyer L. Timothy Fisher and Yitzchak Kopel of Bursor & Fisher, P.A. to represent the class. This attorney is called Class Counsel. You will not be charged for this lawyer. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**<u>When Will the Court Consider the Proposed Settlement?</u>** The Court will hold the Final Approval Hearing at _____.m. on [date] in Courtroom 3 at the George E. Brown, Jr. U.S. Courthouse, 3470 Twelfth Street, Riverside, CA 92501. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representative $5,000 from the Settlement Fund for her service in helping to bring and settle this case. Defendant has agreed to pay Class Counsel reasonable attorneys' fees in an amount to be determined by the Court. Class Counsel is entitled to seek no more than one-third of the Settlement Fund, but the Court may award less than this amount.

**<u>How Do I Get More Information?</u>** For more information, including the full Notice, Claim Form and Settlement Agreement go to www.cowboychannelvppasettlement.com, contact the settlement administrator at 1-[   ]-[    ]-[    ] or Cowboy Channel VPPA Settlement Administrator, [address], or contact Class Counsel at info@bursor.com.

**EXHIBIT D**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP

**Our Records Indicate You Have Subscribed to *Cowboy Channel Plus* and May Be Entitled
to a Payment From a Class Action Settlement.**

*A court authorized this notice.  You are <u>not</u> being sued.  This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against The Cowboy Channel, LLC. The class action lawsuit claims that that Defendant, The Cowboy Channel, LLC, disclosed its subscribers' personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Yahoo Inc. ("Yahoo"), without consent and in violation of the Video Privacy Protection Act (the "VPPA"). The VPPA defines PII to include information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider.  Defendant denies that it violated any law, but has agreed to the settlement to avoid the uncertainties and expenses associated with continuing the case.

- You are included if you are a person in the United States who, from September 25, 2022, to and through October 9, 2024, have or had a subscription to Cowboy Channel Plus (on cowboychannelplus.com).

- Persons included in the Settlement will be eligible to receive a *pro rata* (meaning equal) portion of the Settlement Fund.

- Read this notice carefully. Your legal rights are affected whether you act, or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY [DATE]** | This is the only way to receive a payment. |
| **EXCLUDE YOURSELF BY [DATE]** | You will receive no benefits, but you will retain any rights you currently have to sue the Defendant about the claims in this case. |
| **OBJECT BY [DATE]** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING BY [DATE]** | Ask to speak in Court about your opinion of the Settlement. |
| **DO NOTHING** | You won't get a share of the Settlement benefits and will give up your rights to sue the Defendant about the claims in this case. |

Your rights and options—**and the deadlines to exercise them**—are explained in this Notice.

# BASIC INFORMATION

### 1. Why was this Notice issued?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The Honorable Kenly Kiya Kato, of the U.S. District Court for the Central District of California, is overseeing this case. The case is called *Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP. The person who has sued is called the Plaintiff. The Defendant is The Cowboy Channel, LLC.

### 2. What is a class action?

In a class action, one or more people called the class representative (in this case, Lindsy Saarloos) sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the Class.

### 3. What is this lawsuit about?

This lawsuit claims that Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA") by disclosing its subscribers' personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Yahoo Inc. ("Yahoo") without consent. The VPPA defines PII to include information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider. The Defendant denies that it violated any law. The Court has not determined who is right. Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or the Defendant should win this case. Instead, both sides agreed to a Settlement. That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Class Members will get compensation sooner rather than, if at all, after the completion of a trial.

## WHO'S INCLUDED IN THE SETTLEMENT?

**5. How do I know if I am in the Settlement Class?**

The **Settlement Class** is defined as:

All persons in the United States who have or had a subscription to Cowboy Channel Plus (on cowboychannelplus.com) from September 25, 2022 through, and including, October 9, 2024.

## THE SETTLEMENT BENEFITS

**6. What does the Settlement provide?**

Defendant has created a Settlement Fund totaling $1,000,000.00. Class Member payments, and the cost to administer the Settlement, the cost to inform people about the Settlement, attorneys' fees, and an award to the Class Representative will also come out of this fund (*see* Question 13).

**7. How much will my payment be?**

If you are member of the Settlement Class you may submit a Claim Form to receive a portion of the Settlement Fund. The amount of this payment will depend on how many of the Class Members file valid claims. Each Class Member who files a valid claim will receive a proportionate share of the Settlement Fund. You can contact Class Counsel at 1-646-837-7150 to inquire as to the number of claims filed.

**8. When will I get my payment?**

The hearing to consider the fairness of the settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the settlement, eligible Class Members whose claims were approved by the Settlement Administrator will receive their payment 90 days after the Settlement has been finally approved and/or any appeals process is complete.  The payment will be made in the form of a check, unless you elect to receive payment by PayPal or Venmo, and all checks will expire and become void 180 days after they are issued.

## HOW TO GET BENEFITS

**9. How do I get a payment?**

If you are a Class Member and you want to get a payment, you **must** complete and submit a Claim Form by **[Claims Deadline]**. Claim Forms can be found and submitted by clicking here [hyperlink], or by printing and mailing a paper Claim Form, copies of which are available for download here [hyperlink].

We also encourage you to submit your claim on-line. Not only is it easier and more secure, but it is completely free and takes only minutes!

## REMAINING IN THE SETTLEMENT

**10. What am I giving up if I stay in the Class?**

If the Settlement becomes final, you will give up your right to sue Defendant for the claims this Settlement resolves. The Settlement Agreement describes the specific claims you are giving up against the Defendant. You will be "releasing" the Defendant and certain of its affiliates described in Section 1.23 of the Settlement Agreement. Unless you exclude yourself (*see* Question 14), you are "releasing" the claims, regardless of whether you submit a claim or not. The Settlement Agreement is available through the "court documents" link on the website.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the lawyers listed in Question 12 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

**11. What happens if I do nothing at all?**

If you do nothing, you won't get any benefits from this Settlement. But, unless you exclude yourself, you won't be able to start a lawsuit or be part of any other lawsuit against the Defendants for the claims being resolved by this Settlement.

## THE LAWYERS REPRESENTING YOU

**12. Do I have a lawyer in the case?**

The Court has appointed L. Timothy Fisher and Yitzchak Kopel of Bursor & Fisher, P.A. to be the attorney representing the Settlement Class. They are called "Class Counsel." They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be charged for this lawyer. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## 13. How will the lawyers be paid?

Class Counsel's attorneys' fees, costs, and expenses will be paid from the Settlement Fund in an amount determined and awarded by the Court. Class Counsel is entitled to seek no more than one-third of the $1 million Settlement Fund, but the Court may award less than this amount.

As approved by the Court, the Class Representative will be paid an Incentive Award from the Settlement Fund for helping to bring and settle the case. The Class Representative will seek no more than $5,000 as an incentive award, but the Court may award less than this amount.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## 14. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must mail or otherwise deliver a letter (or request for exclusion) stating that you want to be excluded from the *Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP settlement. Your letter or request for exclusion must also include your name, your address, your signature, the name and number of this case, and a statement that you wish to be excluded. You must mail or deliver your exclusion request no later than **[objection/exclusion deadline]** to:

Cowboy Channel VPPA Settlement
0000 Street
City, ST 00000

## 15. If I don't exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

## 16. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, do not submit a Claim Form to ask for benefits.

## OBJECTING TO THE SETTLEMENT

## 17. How do I object to the Settlement?

If you're a Class Member, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must file with the Court a letter or brief stating that you object to the Settlement in *Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP and identify all your reasons for your objections (including

citations and supporting evidence) and attach any materials you rely on for your objections. Your letter or brief must also include your name, an explanation of the basis upon which you claim to be a Settlement Class Member, the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with your objection, and your signature. If you, or an attorney assisting you with your objection, have ever objected to any class action settlement where you or the objecting attorney has asked for or received payment in exchange for dismissal of the objection (or any related appeal) without modification to the settlement, you must include a statement in your objection identifying each such case by full case caption. You must also mail or deliver a copy of your letter or brief to Class Counsel and Defendant's Counsel listed below.

Class Counsel will file with the Court and post on this website its request for attorneys' fees by [two weeks prior to objection deadline].

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Number 21), you must say so in your letter or brief.  File the objection with the Court and mail a copy to these two different places postmarked no later than **[objection deadline]**.

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| The Hon. Kenly Kiya Kato<br>George E. Brown, Jr.<br>U.S. Courthouse<br>3470 Twelfth Street,<br>Riverside, CA 92501 | L. Timothy Fisher<br>Bursor & Fisher PA<br>1990 North California Blvd., 9th Floor<br>Walnut Creek, CA 94596 | Teresa C. Chow<br>Baker & Hostetler LLP<br>1900 Avenue of the Stars, Suite 2700<br>Los Angeles, CA 90067 |

## 18. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

## 19. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at [time] on **Month 00, 2025** in Courtroom 3 at the George E. Brown, Jr. U.S. Courthouse, 3470 Twelfth Street, Riverside, CA 92501. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider the Class Counsel's request for attorneys' fees and

expenses; and to consider the request for an incentive award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check [www.cowboychannelvppasettlement.com] or call 1-646-837-7150. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of such Final Approval Hearing.

## 20. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

## 21. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must include in your letter or brief objecting to the settlement a statement saying that it is your "Notice of Intent to Appear in *Saarloos v. The Cowboy Channel, LLC,* Case No. 5:24-cv-02058-KK-SP." It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. Your objection and notice of intent to appear must be filed with the Court and postmarked no later than [**objection deadline**], and be sent to the addresses listed in Question 17.

# GETTING MORE INFORMATION

## 22. Where do I get more information?

This Notice summarizes the Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.cowboychannelvppasettlement.com. You may also write with questions to Cowboy Channel VPPA Settlement, P.O. Box 0000, City, ST 00000. You can call the Settlement Administrator at 1-800-000-0000 or contact Class Counsel at info@bursor.com, if you have any questions. Before doing so, however, please read this full Notice carefully. You may also find additional information elsewhere on the case website.

**EXHIBIT E**

## ACKNOWLEDGMENT & GUARANTEE

I, the undersigned, acknowledge and agree as follows on behalf of myself and the firm of Bursor & Fisher, P.A. (the "Firm"):

I have read the Stipulation and Agreement of Settlement entered into by the parties in *Lindsy Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP (C.D. Cal.) ("Settlement Agreement") and understand its terms. I represent and warrant that I am authorized to execute this agreement on the Firm's behalf and to bind the Firm to the obligations set forth herein, and I make this Acknowledgment & Guarantee on behalf of the Firm.

The undersigned understands and agrees that any amount received by the Firm pursuant to the Settlement Agreement is subject to repayment to The Cowboy Channel, LLC by the Firm in the event that the Settlement Agreement is terminated pursuant to its terms. Within twenty (20) days of receiving written notice of termination of the Settlement Agreement from any counsel for the Parties, the Firm will reimburse to The Cowboy Channel, LLC all sums received by the Firm as attorneys' fees and costs pursuant to the Settlement Agreement. By receiving any such sums, the Firm submits to the jurisdiction of the United States District Court for the Central District of California for the enforcement of, and any and all disputes relating to or arising out of, the reimbursement obligations set forth herein and the Settlement Agreement. The Firm agrees to pay The Cowboy Channel, LLC for reasonable attorneys' fees it incurs in enforcing the Acknowledgment & Guarantee.

The Firm further agrees to indemnify, defend, and hold harmless, The Cowboy Channel, LLC and its attorneys from any and all claims and disputes of any kind relating to The Cowboy Channel, LLC's payment of attorneys' fees to the Firm and/or other attorneys' fees for the plaintiffs pursuant to the Settlement Agreement.

Date: December 16, 2024    By: *Yitzchak Kopel*

5

**EXHIBIT 2**

# BURSOR & FISHER

P.A.

www.bursor.com

701 BRICKELL AVENUE           1330 AVENUE OF THE AMERICAS           1990 NORTH CALIFORNIA BLVD.
MIAMI, FL 33131                    NEW YORK, NY 10019                    WALNUT CREEK, CA 94596

## FIRM RESUME

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million-dollar verdicts or recoveries in six of six class action jury trials since 2008. Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act. During the pendency of the defendant's appeal, the case settled for $75.6 million, the largest settlement in the history of the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products. Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

5. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

**BURSOR&FISHER**
P.A.

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re:  Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein et al. v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard-brand antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denied cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Rivera v. Google LLC*, (Cir. Ct. Cook Cnty. Apr. 25, 2022) to represent a certified class of Illinois residents who appeared in a photograph in Google Photos, in alleged violation of the Illinois Biometric Information Privacy Act,

67. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

68. *D'Amario v. The University of Tampa*, (S.D.N.Y. June 3, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by The University of Tampa due to the novel coronavirus, COVID-19,

69. *Fittipaldi v. Monmouth University*, (D.N.J. Sept. 22, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Monmouth University due to the novel coronavirus, COVID-19,

70. *Armstead v. VGW Malta Ltd. et al.* (Cir. Ct. Henderson Cnty. Oct. 3, 2022) to present a certified class of Kentucky residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Kentucky law,

71. *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, (N.D. Ill. Oct. 26, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

72. *Delcid et al. v. TCP HOT Acquisitions LLC et al.* (S.D.N.Y. Oct. 28, 2022) to represent a certified nationwide class of purchasers of Sure and Brut-brand antiperspirants that were allegedly contaminated with benzene,

73. *Kain v. The Economist Newspaper NA, Inc.* (E.D. Mich. Dec. 15, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

74. *Strano v. Kiplinger Washington Editors, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

75. *Moeller v. The Week Publications, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

76. *Ambrose v. Boston Globe Media Partners, LLC* (D. Mass. May 25, 2023) to represent a nationwide class of newspaper subscribers who were also Facebook users under the Video Privacy Protection Act,

77. *In re: Apple Data Privacy Litigation*, (N.D. Cal. July 5, 2023) to represent a putative nationwide class of all persons who turned off permissions for data tracking and whose mobile app activity was still tracked on iPhone mobile devices,

78. *Young v. Military Advantage, Inc. d/b/a Military.com* (Cir. Ct. DuPage Cnty. July 26, 2023) to represent a nationwide class of website subscribers who were also Facebook users under the Video Privacy Protection Act,

79. *Whiting v. Yellow Social Interactive Ltd.* (Cir. Ct. Henderson Cnty. Aug. 15, 2023) to represent a certified class of Kentucky residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Kentucky law,

80. *Kotila v. Charter Financial Publishing Network, Inc.* (W.D. Mich. Feb. 21, 2024) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

81. *Schreiber v. Mayo Foundation for Medical Education and Research* (W.D.
Mich. Feb. 21, 2024) to represent a class of magazine subscribers under the
Michigan Preservation of Personal Privacy Act,

82. *Norcross v. Tishman Speyer Properties, et al.* (S.D.N.Y. May 17, 2024) to
represent a class of online ticket purchasers under New York Arts & Cultural
Affairs Law § 25.07(4).

## <u>SCOTT A. BURSOR</u>

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or
recoveries in six of six civil jury trials since 2008.  Mr. Bursor's most recent victory came in
May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel
and won a $267 million jury verdict against a debt collector for violations of the Telephone
Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel,
the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's
recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict
in favor of the plaintiff and class represented by Mr. Bursor.  The legal trade publication
VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict.  Other than Mr. Bursor and his partner Mr.
Fisher, we know of no lawyer that has tried more than one class action to a jury.  Mr. Bursor's
perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million
to $299 million, is unmatched by any other lawyer.  Each of these victories was hard-fought
against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996.  He served as
Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and
Order of the Coif.  Prior to starting his own practice, Mr. Bursor was a litigation associate at a
large New York based law firm where he represented telecommunications, pharmaceutical, and
technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as
the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and
Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern
Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the
Southern and Middle Districts of Florida, and the Eastern District of Michigan.

## <u>*Representative Cases*</u>

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd
largest classes ever certified.  Mr. Bursor has represented classes including more than 160
million class members, roughly 1 of every 2 Americans.  Listed below are recent cases that are
representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified). These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation. Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class. Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert. This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members. In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.* Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system. In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case. Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006. This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*. After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement. The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004. In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

### Representative Cases

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court).  Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor.  The case lasted more than seven years and involved two trials.  The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000.  The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court).  Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems.  Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions.  The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission).  In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million.  In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

### Selected Published Decisions

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

BURSOR&FISHER
P.A.

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

### ***Selected Class Settlements***

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late fees.

*West v. California Service Bureau, Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and

misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## JOSEPH I. MARCHESE

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A. Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation. He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, unlawful and junk fees, data breach claims, and violations of the Telephone Consumer Protection Act and Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings. Recently, he served on the Plaintiffs' Executive Committee in *In Re: Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement. Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York,

BURSOR&FISHER
P.A.

and the Eastern District of Michigan, as well as the United States Courts of Appeals for the First, Second and Sixth Circuits.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal. In 1998, Joe graduated with honors from Bucknell University.

### *Selected Published Decisions:*

*Farwell v. Google, LLC*, 595 F. Supp. 3d 702 (C.D. Ill. Mar. 31, 2022), denying defendant's motion to dismiss BIPA claims brought on behalf of Illinois students using Google's Workspace for Education platform.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### *Selected Class Settlements:*

*Schreiber v. Mayo Foundation*, Case No. 22-cv-0188-HYJ-RSK (W.D. Mich. 2024) – final approval granted for $52.5 million class settlement to resolve claims of periodical subscribers for alleged statutory privacy violations.

*Edwards v. Mid-Hudson Valley Federal Credit Union*, Case No. 22-cv-00562-TJM-CFH (N.D.N.Y. 2023) – final approval granted for $2.2 million class settlement to resolve claims alleging unlawfully charged overdraft fees on accounts with sufficient funds.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Marquez v. Google LLC*, Case No. 2021-CH-1460 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $100 million class settlement to resolve alleged BIPA violations of Illinois residents appearing on the Google Photos platform.

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re:  Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

## <u>SARAH N. WESTCOT</u>

Sarah N. Westcot is the Managing Partner of Bursor & Fisher's Miami office. She focuses her practice on consumer class actions, complex business litigation, and mass torts.

She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience.  Sarah served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Sarah also has significant experience in high-profile, multi-district litigations.  She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Florida). She also serves on the Plaintiffs' Executive Committee in *In re Apple Inc. App Store Simulated Casino-Style Games Litigation,* MDL No. 2985 (N.D. Cal.) and *In Re: Google Play Store Simulated Casino-Style Games Litigation*, MDL No. 3001 (N.D. Cal.).

Sarah is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the United States District Courts for the Southern and Middle Districts of Florida, and the bars of the United States Courts of Appeals for the Second, Eighth, and Ninth Circuits.

Sarah received her Juris Doctor from the University of Notre Dame Law School in 2009. During law school, she was a law clerk with the Cook County State's Attorney's Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA, gaining early trial experience in both roles. She graduated with honors from the University of Florida in 2005.

Sarah is a member of The National Trial Lawyers Top 100 Civil Plaintiff Lawyers, and was selected to The National Trial Lawyers Top 40 Under 40 Civil Plaintiff Lawyers for 2022.

## NEAL J. DECKANT

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery. Neal focuses his practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards. During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state. Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor. Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star. In 2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

### *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

### *Selected Publications:*

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

## YITZCHAK KOPEL

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation. He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act. Since 2014, Yitz has obtained class certification on behalf of his clients five times, three of which were certified as nationwide class actions. Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern District of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

### *Selected Published Decisions:*

*Bassaw v. United Industries Corp.,* 482 F.Supp.3d 80, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

BURSOR&FISHER
P.A.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

### PHILIP L. FRAIETTA

Philip L. Fraietta is a Partner with Bursor & Fisher, P.A. Phil focuses his practice on data privacy, complex business litigation, consumer class actions, and employment law disputes. Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes. Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements. In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, Illinois, Michigan, and California, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles. In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### ***Selected Published Decisions:***

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages Inc.,* 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Bergeron v. Rochester Institute of Technology,* 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), denying university's motion to dismiss for failure to refund tuition and fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Porter v. NBTY, Inc.,* 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### ***Selected Class Settlements:***

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

BURSOR&FISHER
P.A.

*Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y. 2018) – final approval granted for $8.225 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich. 2017) – final approval granted for $7.6 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Rocchio v. Rutgers, The State University of New Jersey*, Case No. MID-L-003039-20 (Sup. Ct. Middlesex Cnty. 2022) – final approval granted for $5 million class settlement to resolve claims for failure to refund mandatory fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST (E.D.N.Y. 2021) – final approval granted for $2.7 million class settlement to resolve claims for charging allegedly unlawful fees pertaining to paper billing.

*Frederick v. Examsoft Worldwide, Inc.*, Case No. 2021L001116 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $2.25 million class settlement to resolve claims for alleged BIPA violations.

## <u>ALEC M. LESLIE</u>

Alec Leslie is a Partner with Bursor & Fisher, P.A.  He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York.  Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*.  During law school, Alec served as an Articles Editor for Brooklyn Law Review.  In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County.  Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Malone v. Western Digital Corporation*, Case No. 5:20-cv-03584-NC (N.D. Cal.) – final approval granted for class settlement to resolve false advertising claims on hard drive products.

*Frederick et al. v. ExamSoft Worldwide, Inc.*, Case No. 2021L001116 (DuPage Cnty. Ill. 2021) – final approval granted for class settlement to resolve claims over alleged BIPA violations with respect to exam proctoring software.

*D'Amario et al. v. Univ. of Tampa*, Case No. 7:20-cv-07344 (S.D.N.Y. 2022) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Olin et al. v. Meta Platforms, Inc.*, Case No. 3:18-cv-01881-RS (N.D. Cal. 2022) – final approval granted for class settlement involving invasion of privacy claims.

*Croft v. SpinX Games et al.*, Case No. 2:20-cv-01310-RSM (W.D. Wash. 2022) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

*Armstead v. VGW Malta Ltd. et al.*, Case No. 22-CI-00553 (Henderson Cnty. Ky. 2023) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

*Barbieri v. Tailored Brands, Inc.*, Index No. 616696/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Metzner et al. v. Quinnipiac Univ.*, Case No. 3:20-cv-00784 (D. Conn.) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*In re GE/Canon Data Breach*, Case No. 1:20-cv-02903 (S.D.N.Y.) – final approval granted for class settlement to resolve data breach claims.

*Davis v. Urban Outfitters, Inc.,* Index No. 612162/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Armstead v. VGW Malta LTD et al.,* Civil Action No. 22-CI-00553 (Henderson Cir. Ct. Ky.) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

BURSOR & FISHER
P.A.

*Casler et al. v. Mclane Company, Inc. et al.,* Index No. 616432/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Wyland v. Woopla, Inc.,* Civil Action No. 2023-CI-00356 (Henderson Cir. Ct. Ky.) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

*Graziano et al. v. Lego Systems, Inc.,* Index No. 611615/2022 (Nassau Cnty. N.Y.) – final approval granted for class settlement involving untimely wage payments to employees.

*Lipsky et al. v. American Behavioral Research Institute, LLC,* Case No. 50-2023-CA-011526-XXXX-MB (Palm Beach Cnty. Fl.) – final approval granted to resolve allegedly deceptive automatic renewal and product efficacy claims.

*Whiting v. Yellow Social Interactive Ltd.,* Civil Action No. 2023-CI-00358 (Henderson Cir. Ct. Ky.) – final approval granted for class settlement involving allegedly deceptive and/or illegal gambling practices.

## <u>STEPHEN BECK</u>

Stephen is an Associate with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida, the Eastern District of Missouri, and the Northern District of Illinois.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

## <u>STEFAN BOGDANOVICH</u>

Stefan Bogdanovich is an Associate with Bursor & Fisher, P.A. Stefan litigates complex civil and class actions typically involving privacy, intellectual property, entertainment, and false advertising law.

Prior to working at Bursor & Fisher, Stefan practiced at two national law firms in Los Angeles. He helped represent various companies in false advertising and IP infringement cases, media companies in defamation cases, and motion picture producers in royalty disputes. He also advised corporations and public figures on complying with various privacy and advertising laws and regulations.

BURSOR & FISHER
P.A.

Stefan is admitted to the State Bar of California and all of the California Federal District Courts.  He is also a Certified Information Privacy Professional.

Stefan received his Juris Doctor from the University of Southern California Gould School of Law in 2018, where he was a member of the Hale Moot Court Honors Program and the Trial Team.  He received the highest grade in his class in three subjects, including First Amendment Law.

## MAX S. ROBERTS

Max Roberts is an Associate in Bursor & Fisher's New York office.  Max focuses his practice on class actions concerning data privacy and consumer protection.  Max was a Summer Associate with Bursor & Fisher prior to joining the firm and is now Co-Chair of the firm's Appellate Practice Group.

In 2023, Max was named "Rising Star" in the New York Metro Area by Super Lawyers®.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.*  During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis.*  In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and the Fordham Criminal Defense Clinic.  Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024), reversing district court and holding plaintiffs had alleged an injury-in-fact sufficient for Article III standing.  Max personally argued the appeal before the Third Circuit, which can be listened to here.

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), affirming district court's denial of motion to compel arbitration.  Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), reversing district court and holding that Section 631 of the California Invasion of Privacy Act requires prior consent to wiretapping.  Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Mora v. J&M Plating, Inc.*, 213 N.E.3d 942 (Ill. App. Ct. 2d Dist. 2022), reversing circuit court and holding that Section 15(a) of Illinois' Biometric Information Privacy Act requires an entity to establish a retention and deletion schedule for biometric data at the first moment of

possession. Max personally argued the appeal before the Second District, which can be listened to here.

*Shah v. Fandom, Inc.*, --- F. Supp. 3d ---, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024), denying motion to dismiss alleged violations of California pen register statute.

*Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2024 WL 3875785 (N.D. Cal. Aug. 16, 2024), denying motion dismiss alleged violations of California and Pennsylvania wiretapping statutes.

*Gladstone v. Amazon Web Services, Inc.,* --- F. Supp. 3d ---, 2024 WL 3276490 (W.D. Wash. July 2, 2024), denying motion to dismiss alleged violations of California wiretapping statute.

*Rancourt v. Meredith Corp.,* 2024 WL 381344 (D. Mass. Jan. 11, 2024), denying motion to dismiss alleged violations of federal Video Privacy Protection Act, and finding personal jurisdiction over operator of mobile application.

*Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024), denying motion to dismiss alleged violations of federal Video Privacy Protection Act.

*Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1 (D. Mass. 2022), denying motion to dismiss and motion to strike class allegations in case involving sneakers marketed as "Made in the USA."

### ***Selected Class Settlements:***

*Sholopa v. Turk Hava Yollari A.O. (d/b/a Turkish Airlines)*, Case No. 1:20-cv-3294-ALC (S.D.N.Y. 2023) – final approval granted for $14.1 million class settlement to resolve claims of passengers whose flights with Turkish Airlines were cancelled due to COVID-19 and who did not receive refunds.

*Payero v. Mattress Firm, Inc.*, Case No. 7:21-cv-3061-VB (S.D.N.Y. 2023) – final approval granted for $4.9 million class settlement to resolve claims of consumers who purchased allegedly defective bed frames.

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

### *Bar Admissions*

- New York State
- Southern District of New York
- Eastern District of New York
- Northern District of New York
- Northern District of Illinois
- Central District of Illinois
- Eastern District of Michigan
- District of Colorado
- Third Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- Ninth Circuit Court of Appeals

## JULIA K. VENDITTI

Julia K. Venditti is an Associate with Bursor & Fisher, P.A.  Julia focuses her practice on complex civil litigation and class actions.  Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes.  During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award.  Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section.  In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office.  In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

## JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A.  Julian focuses his practice on privacy law and class actions.  Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar.  During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law.  Prior to law school, Julian worked in education.  Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

BURSOR&FISHER
P.A.

## MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A. Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving privacy violations, illegal gambling, financial misconduct, and false advertising. Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Eastern District of Michigan, the Western District of Michigan, the First Circuit Court of Appeals, and the Ninth Circuit Court of Appeals.

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar. During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's Entrepreneurship and Community Development Clinic. In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission. Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division prior to law school.

### Selected Class Settlements:

*Armstead v. VGW Malta Ltd. et al.*, Case No. 22-CI-00553 (Henderson Cnty. Ky. 2023) – final approval granted for $11.75 million class settlement involving allegedly deceptive and/or illegal gambling practices.

*Edwards v. Mid-Hudson Valley Federal Credit Union, Case No. 22-cv-00562-TJM-CFH* (N.D.N.Y. 2023) – final approval granted for $2.2 million class settlement to resolve claims that an upstate New York credit union was unlawfully charging overdraft fees on accounts with sufficient funds.

*Fischer, et al. v. Instant Checkmate LLC, et al.*, No. 19-cv-04892 (N.D. Ill. 2024) – final approval granted for state-by-state non-reversionary cash settlements involving alleged violations of right of publicity statutes totaling in excess of $10.1 million.

*Wyland v. Woopla, Inc.,* Civil Action No. 2023-CI-00356 (Henderson Cir. Ct. Ky. 2023) – final approval granted for $835,000 class settlement involving allegedly deceptive and/or illegal gambling practices.

*Whiting v. Yellow Social Interactive Ltd.,* Civil Action No. 2023-CI-00358 (Henderson Cir. Ct. Ky. 2023) – final approval granted for $1.32 million class settlement involving allegedly deceptive and/or illegal gambling practices.

## JENNA GAVENMAN

Jenna Gavenman is an Associate with Bursor & Fisher, P.A. Jenna focuses her practice on complex civil litigation and consumer class actions. Jenna was a Summer Associate and a

part-time intern with Bursor & Fisher prior to joining the firm as a full-time Associate in September 2022.

Jenna is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Jenna received her Juris Doctor in 2022 from the University of California, Hastings College of the Law (now named UC Law SF). During law school, she was awarded an Honorable Mention for Best Oral Argument in her First-Year Moot Court section. Jenna also participated in both the Medical Legal Partnership for Seniors (MLPS) and the Lawyering for Children Practicum at Legal Services for Children—two of UC Hastings's nationally renowned clinical programs. Jenna was awarded the Clinic Award for Outstanding Performance in MLPS for her contributions to the clinic. In addition, Jenna volunteered with her law school's Legal Advice and Referral Clinic and as a LevelBar Mentor.

In 2018, Jenna graduated *cum laude* from Villanova University with a B.A. in Sociology and Spanish (double major). Jenna was a Division I athlete, competing on the Villanova Women's Water Polo varsity team for four consecutive years.

## EMILY HORNE

Emily Horne is an Associate with Bursor & Fisher, P.A. Emily focuses her practice on complex civil litigation and consumer class actions. Emily was a Summer Associate with Bursor & Fisher prior to joining the firm.

Emily is admitted to the State Bar of California.

Emily received her Juris Doctor from the University of California, Hastings College of the Law in 2022 (now UC, Law SF). During law school, Emily served as Editor-in-Chief for the UC Hastings Communications and Entertainment Law Journal, and she competed on the Moot Court team. Emily also served as a judicial extern in the Northern District of California and as a Teaching Assistant for Legal Writing & Research. In 2015, Emily graduated from Scripps College with a B.A. in Sociology.

## IRA ROSENBERG

Ira Rosenberg is an Associate with Bursor & Fisher, P.A. Ira focuses his practice on complex civil litigation and class actions.

Ira received his Juris Doctor in 2022 from Columbia Law School. During law school, Ira served as a Student Honors Legal Intern with Division of Enforcement at the U.S. Securities and Exchange Commission. Ira also interned during law school in the Criminal Division at the United States Attorney's Office for the Southern District of New York and with the Investor Protection Bureau at the Office of the New York State Attorney General. Ira graduated in 2018 from Beth Medrash Govoha with a B.A. in Talmudic Studies.

BURSOR&FISHER
P.A.

## LUKE SIRONSKI-WHITE

Luke Sironski-White is an Associate with Bursor & Fisher, P.A., focusing on complex civil litigation and consumer class actions.  Luke joined the firm as a full-time Associate in August 2022.

Luke is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Luke received his Juris Doctor in 2022 from the University of California, Berkeley School of Law.   During law school, Luke was on the board of the Consumer Advocacy and Protection Society (CAPS), edited for the Berkeley Journal of Employment and Labor Law, and volunteered with the Prisoner Advocacy Network.

In 2017, Luke graduated from the University of Chicago with a B.A. in Anthropology.  Before entering the field of law Luke was a professional photographer and filmmaker.

## INES DIAZ

Ines Diaz is an Associate with Bursor & Fisher, P.A. Ines focuses her practice on complex civil litigation and class actions.

Ines is admitted to the State Bar of California.

Ines received her Juris Doctor in 2023 from the University of California, Berkeley School of Law.  During law school, Ines served as an Executive Editor of the California Law Review. She also served as an intern with the East Bay Community Law Center's Immigration Clinic and as a Fellow of the Berkeley Law Academic Skills Program.  Additionally, Ines served as an instructor with the University of California, Berkeley Extension, Legal Studies Global Access Program where she taught legal writing to international law students.  In 2021, Ines was selected for a summer externship at the California Supreme Court where she served as a judicial extern for the Honorable Mariano-Florentino Cuéllar.

## CAROLINE C. DONOVAN

Caroline C. Donovan is an Associate with Bursor & Fisher, P.A.  Caroline focuses her practice on complex civil litigation, data protection, mass arbitration, and class actions.  Caroline interned with Bursor & Fisher during her third year of law school before joining full time in Fall 2023.

Caroline is admitted to the State Bar of New York.

Caroline received her Juris Doctor in 2023 from Brooklyn Law School.  During law school, Caroline was a member of the Moot Court Honor Society Trial Division, where she was chosen to serve as a National Team Member.  Caroline competed and coached in numerous competitions across the country, and placed second at regionals in AAJ's national competition in

both her second and third year of law school.  Caroline was also the President of the Art Law Association, and the Treasurer of the Labor and Employment Law Association.

During law school, Caroline was a judicial intern for Judge Kenneth W. Chu of the National Labor Relations Board.  She also interned at the United States Attorney's Office in the Eastern District of New York, as well as a securities class action firm.

## JOSHUA B. GLATT

Joshua Glatt is an Associate with Bursor & Fisher, P.A.  Joshua focuses his practice on complex civil litigation and consumer class actions.  Joshua was a Summer Associate with Bursor & Fisher prior to joining the firm as an Associate.

Joshua earned his Juris Doctor from the University of California College of the Law, San Francisco (formerly U.C. Hastings).  While there, he received a CALI Award for earning the highest grade in Constitutional Law II and served on the executive boards of the Jewish Law Students Association and the American Constitution Society.  Prior to law school, Joshua graduated *summa cum laude* from the Walter Cronkite School of Journalism and Mass Communication at Arizona State University in 2016 and earned a master's degree from the University of Southern California in 2018.

## JOSHUA R. WILNER

Joshua Wilner is an Associate with Bursor & Fisher, P.A.  Joshua focuses his practice on complex civil litigation, data privacy, consumer protection, and class actions.  Joshua was a Summer Associate at Bursor & Fisher prior to joining the firm full time in Fall 2023.

Joshua is admitted to the State Bar of California.

Joshua received his Juris Doctor in 2023 from Berkeley Law.  During law school, he received the American Jurisprudence Award for Constitutional Law.

During law school, Joshua served on the board of the Berkeley Journal of Employment and Labor Law.  Joshua also interned at Disability Rights California, Legal Aid at Work, and a private firm that worked closely with the ACLU of Northern California to enforce the California Racial Justice Act.  In 2022 and 2023, Joshua worked as a research assistant for Professor Abbye Atkinson.

## VICTORIA ZHOU

Victoria Zhou is an Associate in Bursor & Fisher's New York office.  Victoria focuses her practice on class actions concerning data privacy and consumer protection.

Victoria is admitted to the State Bar of New York.

Victoria received her Juris Doctor from Fordham Law School in 2023.  During law school, Victoria served as an Associate Editor of the Moot Court Board and competed in multiple mock trial competitions as a member of the Brendan Moore Trial Advocates.  In

addition, Victoria served as a judicial extern to Chief Judge Mark A. Barnett of the United States Court of International Trade.  In 2019, Victoria graduated *magna cum laude* from Fei Tian College with a B.F.A. in Classical Dance.

### KYLE D. GORDON

Kyle Gordon is an Associate with Bursor & Fisher, P.A.  Kyle focuses his practice on class actions concerning data privacy and consumer protection.  Kyle was a Summer Associate with Bursor & Fisher prior to joining the firm.

Kyle is admitted to the State Bar of New York.

Kyle received his Juris Doctor from Columbia Law School in 2023, where he was a Harlan Fiske Stone Scholar.  During law school, Kyle was a Staff Editor for the Columbia Science and Technology Law Review.  In 2020, Kyle graduated *summa cum laude* from New York University with a B.A. in Politics and became a member of Phi Beta Kappa.  Prior to law school, Kyle interned in the Clerk's Office of the United States District Court for the District of Columbia.

### ELEANOR R. GRASSO

Eleanor Grasso is an Associate with Bursor & Fisher, P.A.  Eleanor focuses her practice on complex civil litigation, including data privacy and consumer protection class actions.

Eleanor is admitted to the State Bar of New York.

Eleanor earned her Juris Doctor from Fordham University School of Law.  During law school, Eleanor was a member of the Fordham Journal of Intellectual Property, Media & Entertainment Law, serving as Symposium Editor for Volume XXXIV.  Eleanor was also a member of the Brendan Moore Trial Advocacy Team, served as a Research Assistant, and was a member of the Board of Student Advisors.

Throughout her time in law school, Eleanor interned for the Office of the Public Defender for the Sixth Judicial Circuit of Florida in the Misdemeanor Unit, the Office of the Federal Public Defender for the Middle District of Tennessee in the Capital Habeas Unit, the ACLU of Florida, and for the Honorable Kiyo A. Matsumoto in the United States District Court for the Eastern District of New York.  Eleanor was a Summer Associate with Bursor & Fisher and also interned part-time during her third year of law school.

Eleanor earned her Bachelors from the University of Florida, with a double-major in Criminology & Law and Political Science and a minor in French & Francophone studies.

### RYAN B. MARTIN

Ryan Martin is an Associate with Bursor & Fisher, P.A.  Ryan focuses his practice on complex civil litigation and consumer class actions.  He was a Summer Associate and part-time law clerk with Bursor & Fisher prior to joining the firm as a full time Associate in August 2024.

BURSOR&FISHER
P.A.

Ryan is admitted to the State Bar of California.  He earned his Juris Doctor from the University of California College of the Law, San Francisco (formerly U.C. Hastings), graduating *Cum Laude* with a Concentration in Environmental Law and as a member of the Honors Society. While there, he was a Senior Production Editor of the *U.C. Law Journal*, was President of the Hastings Environmental Law Association, and was a Torts Teaching Fellow.

Prior to law school, Ryan graduated from the W.A. Franke College of Business at Northern Arizona University with a Bachelors of Science in Hotel and Restaurant Management and a minor in Business.  Ryan also studied Sustainable Business and Hotel Management at the Internationale Hochschule of Applied Sciences in Bad Honnef Germany and is a certified yoga instructor.