**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSY SAARLOOS, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>THE COWBOY CHANNEL, LLC,<br><br>     Defendant. | Case No. 5:24-cv-02058-KK-SP<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES AND SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: August 7, 2025<br>Time: 10:00 a.m.<br>Ctrm: 3<br>Judge: Hon. Kenly Kiya Kato |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 7, 2025 at 10:00 a.m., in Courtroom 3 of the above-captioned Court before the Honorable Kenly Kiya Kato, Plaintiff Lindsy Saarloos ("Plaintiff"), by and through Class Counsel, will move and hereby does move, pursuant to Fed. R. Civ. P. 23(h), for entry of the [Proposed] Order Granting the Motion for Attorneys' Fees, Costs and Expenses, and Service Award.

This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Max S. Roberts and the exhibits attached thereto; the Declaration of Lindsy Saarloos; and such evidence and argument as the Court may consider at any hearing on this motion.

Dated: May 22, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
      L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Class Counsel*

# <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ................................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY ........................................ 2

SUMMARY OF THE PROPOSED SETTLEMENT ....................................... 2

ARGUMENT ..................................................................................................... 2

I.    CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE PERCENTAGE OF THE BENEFIT METHOD...................................... 3

    A.    Class Counsel Achieved Excellent Results For The Class ..................... 4

    B.    Plaintiff's Claims Carried Substantial Risk ........................................ 5

    C.    Class Counsel Provided Quality Work In A Complex Case .................. 7

    D.    Market Rates As Reflected By Awards In Similar Cases Support Class Counsel's Fee Request........................................ 7

    E.    Class Counsel Handled This Case On A Contingent Fee Basis And Bore The Financial Burden ..................................... 8

II.    CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER A LODESTAR CROSS-CHECK........................................ 10

    A.    Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate...................................... 10

    B.    All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar........................................ 11

III.    CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS................................. 13

IV.    PLAINTIFF'S REQUESTED SERVICE AWARD IS REASONABLE ....... 13

CONCLUSION.................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2
**PAGE(S)**

3
**CASES**

4

*Barbosa v. Cargill Meat Solutions Corp.*,
5
   297 F.R.D. 431 (E.D. Cal. 2013)................................................................ 10

6
*Ching v. Siemens Indus., Inc.*,
7
   2014 WL 2926210 (N.D. Cal. June 27, 2014) ........................................ 6

8
*Corzine v. Whirlpool Corp.*,
   2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ...................................... 12
9

10
*Edwards v. National Milk Producers Federation*,
   2017 WL 3616638 (N.D. Cal. June 26, 2017) ........................................ 4

11
*Eichenberger v. ESPN, Inc.*,
12
   876 F.3d 979 (9th Cir. 2017)..................................................................... 6

13
*Fischel v. Equitable Life Assur. Soc'y*,
14
   307 F.3d 997 (9th Cir. 2002)................................................................ 3, 12

15
*Ghanaat v. Numerade Labs, Inc.*,
16
   689 F. Supp. 3d 714 (N.D. Cal. 2023) ..................................................... 6

17
*Graham v. DaimlerChrysler Corp.*,
18
   34 Cal. 4th 553 (2004)............................................................................... 9

19
*Greko v. Diesel U.S.A., Inc.*,
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ...................................... 14
20

21
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)............................................................ 3, 7, 10

22
*Harris v. Marhoefer*,
23
   24 F.3d 16 (9th Cir. 1994)....................................................................... 13

24
*Hartless v. Clorox Co.*,
25
   273 F.R.D. 630 (S.D. Cal. 2011).......................................................... 4, 10

26
*Hensley v. Eckerhart*,
27
   461 U.S. 424 (1983) ............................................................................... 11

28

*Hightower v. JPMorgan Chase Bank, N.A.*,
  2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) ........................................................ 14

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................... 8

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................. 4, 7, 11

*In re California Pizza Kitchen Data Breach Litig.*,
  129 F.4th 667 (9th Cir. 2025) ............................................................................ 7, 9

*In re High-Tech Employee Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...................................................... 11

*In re Hulu Privacy Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ................................................................... 5

*In re Hulu Privacy Litig.*,
  2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................................................... 5

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................................................... 5, 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 7

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y.1999) ....................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods.* Liab. Litig.,
  746 F. App'x 655 (9th Cir. 2018) ........................................................................ 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................. 8, 9

*Jancik v. WebMD LLC*,
  2025 WL 560705 (N.D. Ga. Feb. 20, 2025) .......................................................... 5

*Joh v. Am. Income Life Ins. Co.*,
  2021 WL 66305 (N.D. Cal. Jan. 7, 2021) ........................................................... 15

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ........................................................................... 10, 12

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012)................................................................5, 6, 8

*Lealao v. Beneficial California, Inc*,
   82 Cal. App. 4th 19 (2000).........................................................................4

*Martinez v. D2C, LLC*,
   2024 WL 4367406 (S.D. Fla. Oct. 1, 2024)................................................5

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
   2018 WL 3474472 (E.D. Cal. July 19, 2018)..............................................9

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996)......................................................................11

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)................................................................6

*Nitsch v. DreamWorks Animation SKG Inc.*,
   2017 WL 2423161 (N.D. Cal. June 5, 2017).............................................11

*Perez v. Rash Curtis & Associates*,
   2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)...........................................10

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
   281 F. Supp. 3d 833 (N.D. Cal. 2017).....................................................12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)....................................................................14

*Solomon v. Flipps Media, Inc.*,
   136 F.4th 41 (2d Cir. 2025).......................................................................6

*State of Florida v. Dunne*,
   915 F.2d 542 (9th Cir. 1990).....................................................................3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)..............................................................3, 4, 13

*Steiner v. Am. Broad. Co.*,
   248 Fed. Appx. 780 (9th Cir. 2007).........................................................12

*Therrien v. Hearst Television, Inc.*,
   2025 WL 509454 (D. Mass. Feb. 14, 2025)...............................................5

*Therrien v. Hearst Television, Inc.*,
  2025 WL 1208535 (D. Mass. Apr. 25, 2025) ...........................................5

*Van Lith v. iHeartMedia + Entertainment, Inc.*,
  2017 WL 4340337 (E.D. Cal. Sept. 29, 2017)........................................3

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .......................................................14

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010)............................................................8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)...................................................4, 10, 12

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997).................................................................3

*Zakskorn v. American Honda Motor Co.*,
  2015 WL 3622990 (E.D. Cal. June 9, 2015).........................................11

**RULES**

Fed. R. Civ. P. 23(h) ................................................................................i, 2

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03
  (3d ed. 1992)..........................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Lindsey Saarloos ("Plaintiff"), by and through her undersigned counsel, Bursor & Fisher, P.A. ("Class Counsel"), respectfully submit this memorandum in support of Plaintiff's Motion for Award of Attorney's Fees, Costs and Expenses and Service Award.

## INTRODUCTION

Plaintiff and Class Counsel have achieved an outstanding result in this case. The $1 million Settlement Fund[1] they have negotiated provides a real and substantial monetary benefit to approximately 155,000 potential settlement class members. Declaration of Max S. Roberts (the "Roberts Decl.") ¶¶ 9-10, 20. This Settlement brings certainty, closure, and significant and valuable relief for individuals to what would otherwise likely be a contentious and costly litigation regarding Defendant's unlawful disclosure of Cowboy Channel Plus ("CC+") users' personally identifiable information ("PII").

Class Counsel now request that the Court approve an award of attorneys' fees in the amount of $250,000, or 25% of the total $1 million value of the Settlement Fund. Calculating the fee award based on a percentage of the Settlement Fund is straightforward, fair, and strongly supported by Ninth Circuit case law. Cross-checking this percentage fee against Class Counsel's lodestar validates the reasonableness of Class Counsel's fee request. As of May 5, 2025, Class Counsel had worked 124.1 hours on this case for a total lodestar fee, at current billing rates, of $72,585.00. Roberts Decl. ¶ 30; *see also id.* Ex. 2 (Bursor & Fisher detailed billing records for this case). Class Counsel's blended hourly rate of $584.89 is well within the bounds of reasonable hourly rates in this District and in California courts generally. *Id.* ¶¶ 33-36. A fee award of $250,000 would represent a multiplier of 3.44 over the

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement (ECF No. 23-1 at Ex. 1)

base lodestar fee (*see* Roberts Decl. ¶ 30), which is well within the accepted range of multipliers approved by courts in the Ninth Circuit.

Plaintiff also requests that the Court award reimbursement of expenses of $7,145.92. As detailed herein, these expenses were reasonable and necessarily incurred for the prosecution of this action. Roberts Decl. ¶¶ 38-39.

Finally, Plaintiff requests that the Court award her a service award in the amount of $5,000 to account for the significant time and effort she invested in this case on behalf of the Class.

## BACKGROUND AND PROCEDURAL HISTORY

The Declaration of Max S. Roberts, submitted herewith, contains a detailed discussion of the background and procedural history of this case, including (i) Plaintiff's pre-suit investigation, (ii) the pleadings, (iii) the Parties' arms-length settlement negotiations, and (v) preliminary approval and dissemination of notice. *See* Roberts Decl. ¶¶ 3-7.

## SUMMARY OF THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, Defendant has established a $1 million non-reversionary Settlement Fund from which all Settlement Class Members are entitled to a *pro rata* share. Settlement ¶ 2.1(a). Divided amongst approximately 155,000 Class Members, the Settlement provides for a recovery of approximately $6.45 per individual Class Member. Roberts Decl. ¶ 9. As set forth in Plaintiff's Motion for Preliminary Approval (ECF No. 23 at 16), this compares favorably with other privacy settlements under the VPPA or its state-law analogs, especially given the amount is likely to be increased depending on the claims rate. Roberts Decl. ¶ 10.

## ARGUMENT

Fed. R. Civ. P. 23(h) provides that a district court may "award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Under Ninth Circuit standards, a district court may award attorney's fees under either the "percentage-of-the-benefit" method or the "lodestar" method where a

common fund has been created. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Typically, courts apply the "percentage-of-the-benefit" method in common fund cases, such as this one. *Van Lith v. iHeartMedia + Entertainment, Inc.*, 2017 WL 4340337, at *15 (E.D. Cal. Sept. 29, 2017).

The Settlement Agreement requires Defendant to pay Class Counsel's attorney's fees, costs, and expenses awarded by the Court "up to one-third of the Settlement Fund." Settlement § 8.1. Class Counsel here has requested an award of $250,000 in attorneys' fees. This equals 2% of the $1 million monetary value of the settlement. And it equals a 4.14 multiplier on Class Counsel's lodestar. As set forth below, under either the percentage of the benefit method (which the Court should apply) or the lodestar method, Class Counsel's fee request is reasonable and should be approved accordingly.

## I. CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE PERCENTAGE OF THE BENEFIT METHOD

Under the common fund doctrine, courts award attorney's fees based on a percentage of the total settlement. *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) ("When a case results in a common fund for the benefit of a plaintiff class, a court may exercise its equitable powers to award plaintiff's attorney's fees out of the fund."); *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").

To calculate attorney's fees based on the percentage of the benefit, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available rather than the amount actually paid out. *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class instead of amount being made available). The Court must also include the value of the benefits

conferred to the Class, including any attorney's fees, expenses, and notice and claims administration payments to be made. *See, e.g.*, *Staton*, 327 F.3d at 972-74; *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012). Stated otherwise, California courts include the requested attorneys' fees when calculating the total value of the settlement fund. *Lealao v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Edwards v. National Milk Producers Federation*, 2017 WL 3616638, at *8 (N.D. Cal. June 26, 2017). The Ninth Circuit has identified a number of factors that may be relevant in determining if a fee award is reasonable: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) market rates as reflected by awards made in similar cases; and (v) the contingent nature of the fee and the financial burden carried by the plaintiff. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, each of these factors definitively supports Class Counsel's fee request because Class Counsel's outstanding work secured remarkable results for the Settlement Class in the face of substantial risks to any recovery.

### A.    Class Counsel Achieved Excellent Results For The Class

"[T]he overall result and benefit to the Class … has been called the most critical factor in granting a fee award." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *9 (N.D. Cal. Aug. 17, 2018) (cleaned up). The considerations offered by the Settlement Agreement provide excellent results for the Class.

The Settlement establishes a $1 million non-reversionary Settlement Fund from which all Settlement Class Members are entitled to a *pro rata* share. Settlement ¶ 2.1(a). Divided amongst approximately 155,000 Class Members, the Settlement provides for a recovery of approximately $6.45 per individual Class Member. This compares favorably with other privacy settlements under the VPPA or its state-law

analogs, some of which have provided zero monetary recovery for class members. *Stark et al. v. Patreon, Inc.*, Case No. 3:22-cv-3131, ECF No. 192 (N.D. Cal. Sept. 23, 2024) (granting preliminary approval to VPPA settlement with recovery of $6.04 per class member); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *1 (N.D. Cal. Mar. 18, 2013) (approving VPPA settlement where balance of settlement proceeds, after payment of attorneys' fees and settlement administration expenses, went to *cy pres* rather than to class members); *Lane v. Facebook, Inc.*, 696 F.3d 811, 817 (9th Cir. 2012) (same). And likely, Class Members will recover more depending on claims rates. Roberts Decl. ¶ 10.

**B.    Plaintiff's Claims Carried Substantial Risk**

This factor looks to the risk and novelty of the claims at issue. Both are certainly present here. *See generally* Roberts Decl. ¶¶ 13-22 (discussing the risks of litigating Plaintiff's claims). Class Counsel undertook significant financial risk in prosecuting this case, including incurring sizable costs to investigate the traffic on Defendant's Website. Compl. ¶ 20 (discussing "dynamic analysis of the Website" commissioned by Class Counsel).

Moreover, while Plaintiff believes she would likely prevail on her claims, she is also aware of the serious risks inherent in her claims. Few VPPA cases have made it to class certification, and courts that have adjudicated these cases have largely denied class certification. *Compare Jancik v. WebMD LLC*, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (granting class certification of a VPPA claim); *with Martinez v. D2C, LLC*, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) (denying class certification of a VPPA claim); *In re Hulu Privacy Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014) (same); *Therrien v. Hearst Television, Inc.*, 2025 WL 509454 (D. Mass. Feb. 14, 2025) (same). And no VPPA claim has made it past summary judgment. *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (granting summary judgment for defendant on VPPA claim); *Therrien v. Hearst Television, Inc.*, 2025 WL 1208535 (D. Mass. Apr. 25, 2025) (same).

In addition, earlier this month, the Second Circuit held in an issue of first impression that a Facebook ID and URL string sent to Facebook were not "personally identifiable information" within the meaning of the VPPA. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025). Those are among the identifiers Plaintiff alleges are at issue here. Compl. ¶¶ 27-28. To be sure, most district courts, including those in California, have come to the opposite conclusion. *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII."). And the Ninth Circuit has implied it agrees with that reasoning. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) ("A Facebook link … may very well readily enable an 'ordinary person' to identify an individual."). Still, it is unclear whether the pendulum may begin to swing in the other direction in the wake of *Solomon*.

All this is to say, while Plaintiff believes she will succeed at later stages of this stage, when considering the "vagaries of litigation," the "significance of immediate recovery by way of the [proposed] compromise" is much preferable "to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). This is especially true given the significant risks Plaintiff faces here. In such circumstances, courts have held it is "proper to take the bird in hand instead of a prospective flock in the bush." *Id.* (cleaned up). Indeed, "settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014); see *id.* ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as the Court.").

Moreover, approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. As the Ninth Circuit has held, "[a]n early settlement may often be beneficial for the

class, as it reduces attorneys' fees, preserves value for the class, and offers immediate compensation for injured class members." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025).

In short, Class Counsel achieved an excellent result here in comparison to other VPPA cases, and one that obviates the significant risks of non-payment absent settlement.

## C.    Class Counsel Provided Quality Work In A Complex Case

The prosecution of a complex, nationwide class action like this one "requires unique … skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (cleaned up).  This is particularly so in data privacy cases involving technical expertise in an evolving area of the law.

Class Counsel more than delivered.  Over the last year of litigation, Class Counsel (i) conducted an extensive pre-suit investigation into Defendant's data sharing practices, including commissioning a dynamic analysis of Defendant's Website; (ii) drafted the initial Complaint; (iii) reviewed information produced by Defendant in aid of settlement discussions; (iv) negotiated the Settlement at arm's-length with Defendant; (v) successfully moved for preliminary approval; and (vi) managed (and are continuing to manage) the dissemination of notice and the claims process.  Roberts Decl. ¶¶ 3-7, 27-28.

The work performed by Class Counsel in this case represents the highest caliber of legal work and strongly supports their requested fee award.  *Id.*; *see also In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 (approving attorneys' fees where class counsel "performed significant factual investigation prior to bringing these action … and participated in protracted negotiations with Anthem").

## D.    Market Rates As Reflected By Awards In Similar Cases Support Class Counsel's Fee Request

Class Counsel's 25% fee request is the starting benchmark set by the Ninth Circuit.  *Hanlon*, 150 F.3d at 1029.  This amount compares favorably to cases in this

Circuit, including cases brought under the VPPA. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *9-10 (approving fee award of "25% of the recovery obtained," even though class members did not receive actual compensation); *Lane*, 696 F.3d at 818 (affirming award of approximately $2.3 million in fees based on $9.5 million settlement fund, all of which was distributed to *cy pres*). And here, the Settlement Fund is non-reversionary, meaning Class Counsel is seeking 25% in fees of what is actually being paid out by Defendant.

Fee awards must also consider the interest in "encourage[ing] plaintiff's attorneys to move for early settlement, provid[ing] predictability for the attorneys and the class members, and reduc[ing] the time consumed by counsel and court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

Based on the foregoing, there is ample authority to support a fee award of 25% of the Settlement Fund.

### E. Class Counsel Handled This Case On A Contingent Fee Basis And Bore The Financial Burden

To date, Class Counsel has worked for almost a year with no payment, and no guarantee of payment absent a successful outcome. That presented considerable risk. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010). Courts have long recognized that attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorneys' normal hourly rates. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant. *Id*. at 1300. In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases … [I]f this 'bonus' methodology did not exist, very few lawyers could take on

the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (cleaned up); *see also McKeen-Chaplin v. Provident Savings Bank, FSB*, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018) ("Counsel has not received payment for the vast majority of its time spent on this case over the last five and a half years, and took on significant financial risk by taking on this action on a contingency fee basis."); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-98 (S.D.N.Y.1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended.").

Further, if the case had advanced through class certification, Class Counsel's expenses would have increased many-fold, and Class Counsel would have been required to advance these expenses potentially for several years to litigate this action through judgment and appeals.  This is compounded by the risky nature of this case.  Argument § I.B., *supra*.  So by achieving an early resolution, Class Counsel "reduce[d] attorneys' fees, preserve[d] value for the class, and" obviated the significant risk of non-payment.  *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th at 678.

\*     \*     \*

Weighing each of the aforementioned factors, Class Counsel's fee request of $250,000—or 25% of the value of the Settlement—is reasonable under the "percentage-of-the-benefit" method.

## II.    CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER A LODESTAR CROSS-CHECK

Courts in the Ninth Circuit often examine the lodestar calculation as a cross-check on the percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050.  The cross-check analysis is a two-step process.  *First*, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys.[2]  *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013).  *Second*, the court cross-checks the proposed percentage fee against the lodestar.  *Id.*  "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)." *Id.* (cleaned up).  Here, the lodestar cross-check confirms the reasonableness of Class Counsel's requested fee.

### A.    Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel has submitted their detailed daily billing records showing what work was done and by whom.  Roberts Decl. Ex. 3.  Those records confirm Class Counsel efficient and reasonable billing.

Rates are "reasonable where they [are] similar to those charged in the community and approved by other courts." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011).  Here, the blended hourly rate for Class Counsel's work of $584.89 is reasonable (*see* Roberts Decl. ¶ 30).  Indeed, California courts have previously found Class Counsel's rates to be fair and reasonable.  *See Perez v. Rash*

---

[2] Where a court is calculating a fee award based solely on counsel's lodestar, the lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying twelve factors courts may consider in analyzing the reasonableness of an attorneys' fee request).

*Curtis & Associates*, 2020 WL 1904533, at \*20 (N.D. Cal. Apr. 17, 2020) (finding Bursor & Fisher's blended hourly rate of $634.48 to be reasonable); *Zakskorn v. American Honda Motor Co.*, 2015 WL 3622990, at \*13-15 (E.D. Cal. June 9, 2015) (approving a fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and $450 per hour for associates).

California courts have likewise sustained rates like those of Class Counsel's. *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at \*17 (approving billing rates for partners between $400 and $970, and associates between $185 to $850 "with most under $500"); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at \*9 (N.D. Cal. June 5, 2017) (finding rates for senior attorneys of between $870 to $1200 per hour to be reasonable); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at \*9 (N.D. Cal. Sept. 2, 2015) (approving billing rates of $490 to $975 for partners, $310 to $800 for non-partner attorneys, and $190 to $430 for paralegals, law clerks, and litigation support staff). And based on Class Counsel's experience, Class Counsel's hourly rates are reasonable compared to other legal fees charged in similar matters. *See* Roberts Decl. ¶¶ 33-36, *id.* Exs. 3-12.

In performing its cross-check analysis, the Court should find Class Counsel's hours and rates reasonable.

### B. All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar

The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364. In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and

complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases. *Fischel*, 307 F.3d at 1007, n. 7; *see also Kerr*, 526 F.2d at 70. Class Counsel discussed most of these factors above and all weigh heavily in favor of a multiplier and the requested fee award in this action. *See* Argument § I, *supra*.

A fee award of $250,000 would represent a multiplier of 3.44 over the base lodestar fee of $72,585.00 (*see* Roberts Decl. ¶ 30). In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4. *See Vizcaino*, 290 F.3d at 1051 n.6 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Steiner v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).

Moreover, Courts routinely include the time class counsel projects to spend on a matter in the lodestar cross-check. *See*, *e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement"); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) (including, over the defendants' objection, "125 anticipated future hours" to be spent on "communicating with the settlement administrator and responding to inquiries from class members" in the lodestar calculation); *Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *11 (N.D. Cal. Dec. 31, 2019) (including "an estimate of 250 hours for future work to complete Settlement's claims process through 2026" in the lodestar calculation). Here, Class Counsel anticipates spending at least an additional 25-50 hours drafting the final approval motion, preparing for and attending

the Final Approval Hearing, and dealing with settlement administration and Class Member inquiries. Roberts Decl. ¶ 31. Including an additional 25 to 50 hours at Class Counsel's blended hourly rate of $584.89 would increase Class Counsel's lodestar to between $87,207.25 to $101,829.50 and decrease Class Counsel's requested multiplier to between 2.46 to 2.87. *Id.* This further supports the reasonableness of Class Counsel's requested multiplier.

Thus, the 25% fee award is justified by a 3.44 multiplier, which is within the normal 1 to 4 range approved by the Ninth Circuit.

## III. CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $7,145.92 in prosecuting this litigation on behalf of the Class. Roberts Decl. ¶ 38; *see also id.* Ex. 13.

The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement. *See Staton*, 327 F.3d at 974. Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). These expenses include court fees, research fees—including the dynamic analysis that is at the foundation of the allegations in this lawsuit—service fees, and travel expenses related to the preliminary approval hearing (which was taken under submission after the expenses were incurred). Roberts Decl. ¶ 39. Each of these expenses was necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred. *Id.* ¶ 38.

## IV. PLAINTIFF'S REQUESTED SERVICE AWARD IS REASONABLE

In recognition of her efforts on behalf of the Class, and subject to the approval of the Court, Ms. Sarloos seeks a $5,000 incentive award as appropriate compensation for her time and effort serving as the Class Representatives in this litigation.

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *13 (N.D. Cal. Apr. 26, 2013) (granting request for $5,000 incentive award). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, inter alia, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. See *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The requested amount of $5,000 for Plaintiff reflects her significant involvement and dedication to the case. Plaintiff's involvement in this action was critical to the ultimate success of the case. Class Counsel consulted with Plaintiff throughout the investigation, filing, prosecution and settlement of this litigation. Roberts Decl. ¶¶ 40-42; *see also* Sarloos Decl. ¶¶ 3-7, 9. As such, Plaintiff was actively involved in the litigation and devoted substantial time and effort to the case. *Id*. Plaintiff was prepared to "go the distance" in this litigation to continue to represent the Class and fight to obtain significant relief on their behalf. Roberts Decl. ¶ 41; Sarloos Decl. ¶¶ 6, 9. Plaintiff's actions and dedication played a significant role in this case and helped achieve the exceptional settlement. Roberts Decl. ¶ 41.

The requested Service Award also represents 0.5% of the Settlement Fund, which is reasonable. *See, e.g., Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *13 (C.D. Cal. Aug. 4, 2015) (granting service awards and noting the service awards, "which constitute 1.5% of the maximum settlement amount, do not significantly reduce the amount of settlement funds available to the rest of the class");

*Joh v. Am. Income Life Ins. Co.*, 2021 WL 66305, at *9 (N.D. Cal. Jan. 7, 2021) (same where service awards were "equal to 0.5% of the net Settlement fund").

Accordingly, a $5,000 service award for Plaintiff is fair and reasonable.

## CONCLUSION

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court grant the Motion for Attorneys' Fees, Costs, and Expenses and Service Award and award the following:

- $250,000.00 in attorneys' fees,
- $7,145.92 in costs, and expenses; and
- $5,000 as a service award to Plaintiff

Dated: May 22, 2025                    Respectfully submitted,

                                       **BURSOR & FISHER, P.A.**

                                       By: */s/ L. Timothy Fisher*
                                           L. Timothy Fisher

                                       L. Timothy Fisher (State Bar No. 191626)
                                       1990 North California Blvd., 9th Floor
                                       Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
                                       Facsimile: (925) 407-2700
                                       E-mail: ltfisher@bursor.com

                                       **BURSOR & FISHER, P.A.**
                                       Max S. Roberts (*Pro Hac Vice*)
                                       1330 Avenue of the Americas, 32nd Floor
                                       New York, NY 10019
                                       Telephone: (646) 837-7150
                                       Facsimile: (212) 989-9163
                                       E-mail: mroberts@bursor.com

                                       *Class Counsel*