**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSY SAARLOOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE COWBOY CHANNEL, LLC,<br><br>Defendant. | Case No. 5:24-cv-2058<br><br>**DECLARATION OF MAX S. ROBERTS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES AND SERVICE AWARD**<br><br>Date: August 7, 2025<br>Time: 10:00 a.m.<br>Ctrm: 3<br>Judge: Hon. Kenly Kiya Kato |

I, Max S. Roberts, declare as follows:

1. I am an associate at Bursor & Fisher, P.A., who is Class Counsel and counsel for Plaintiff Lindsy Sarloos in this action. I am an attorney at law licensed to practice in the State of New York and admitted *pro hac vice* in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2. I submit this declaration in support of Plaintiff's Motion for Final Approval and for an Award of Attorneys' Fees, Costs and Expenses, and Service Award.

## I. BACKGROUND AND OVERVIEW OF THE LITIGATION

### A. Litigation History

3. On September 25, 2024, Plaintiff Lindsy Saarloos commenced this action, alleged that Defendant violated the Video Privacy Act ("VPPA"), 18 U.S.C. § 2710.

4. Prior to the commencement of the action, and as set forth in the Complaint, Class Counsel commissioned a dynamic analysis of Defendant's Website. *See* Compl. ¶ 20. The dynamic found that "when a CC+ Website user creates an account and watches a pre-recorded video on the CC+ Website, Defendant discloses" information to Meta, Google, and Yahoo that Plaintiff alleges identifies who the user is and what pre-recorded videos they watched. *Id.* ¶ 27. The dynamic analysis served as the factual perquisite for this action and lent plausibility to Plaintiff's allegations.

5. Shortly after the commencement of this action, the Parties engaged in arm's-length negotiations, across several months, in an effort to resolve this litigation. During this process the parties exchanged informal discovery, including on issues such as the size and scope of the putative class. Class Counsel also investigated the capabilities of the third parties at issue and the legal and factual merits of Plaintiff's claims and Defendant's defenses. Indeed, Class Counsel has

extensive experience litigating data privacy class actions, and class actions brought under the VPPA in particular. Thus, Class Counsel was adequately informed of the strengths and weaknesses of Plaintiff's case during the course of the negotiations.

6. On December 16, 2024, the Parties executed a term sheet setting forth the principal material terms of the Settlement. Attorneys' fees and service awards were negotiated only after agreement was reached on all other material terms of the settlement. Thereafter, the Parties spent substantial time working together on a long form settlement and consulting with a reputable claims administrator, Simpluris, on a notice plan.

7. On February 3, 2025, the Parties executed the full-length Settlement Agreement, which was filed publicly at ECF No. 23-1 at Ex. 1. On March 28, 2025, the Court (i) preliminary approved the Class Action Settlement Agreement; (ii) certified the class for the sole purpose of effectuating the Settlement Agreement; (iii) appointed Lindsy Saarloos as the Class Representative; (iv) and appointed Bursor & Fisher, P.A. as Class Counsel. ECF No. 30.

**B.     Relevant Settlement Terms**

8. The Parties negotiated and ultimately reached the terms of the Settlement through the assistance of experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's-length.

9. The Settlement Agreement creates a non-reversionary $1,000,000 Settlement Fund from which all Settlement Class Members are entitled to a *pro rata share*. Settlement ¶ 2.1(a). Divided amongst approximately 155,000 Class Members, the Settlement provides for a recovery of approximately $6.45 per individual Class Member.

10. However, Class Counsel reasonably expects that Class Members will receive more than $6.45 based on the claims rate in this action. While the Claims

Deadline has not yet elapsed, the average claims rate in most class actions is between 4-9%.[1]  Here, there are approximately 155,000 Class Members.  So, assuming average claims rates, Class Counsel reasonably expects that Class Members who submit Approved Claims will receive between $42.65 to $95.97.

11.  Attorneys' fees, costs, expenses, and services awards for Plaintiff are to be paid from the Settlement Fund in an amount determined by the Court.  Settlement ¶ 8.1. The Settlement permits Class Counsel to request up one-third of the Settlement Fund in attorneys' fees, costs, and expenses, and for Plaintiff to seek a service award of up to $5,000. *Id.* ¶¶ 8.1, 8.3.

12.  Here, Class Counsel has requested $250,000 in attorneys' fees, $7,145.92 in and costs and expenses, and a service award of $5,000 for Plaintiff.

### C.  Challenges Of Litigating Plaintiff's Claims

13.  Plaintiff and Class Counsel recognize that despite their belief in the strength of Plaintiff's claims, and Plaintiff and the Class's ability to ultimately secure a favorable judgment at trial, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain.

14.  To the best of my knowledge, while numerous putative class actions have been brought under the VPPA, few VPPA cases have made it to class certification, and courts that have adjudicated these cases have largely denied class certification. *Compare Jancik v. WebMD LLC*, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (granting class certification of a VPPA claim); *with Martinez v. D2C, LLC*, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) (denying class certification of a VPPA claim); *In re Hulu Privacy Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014) (same); *Therrien v. Hearst Television, Inc.*, 2025 WL 509454 (D. Mass. Feb. 14, 2025) (same).

---

[1] FTC, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS, at 11 (2019).

15. Further, no VPPA claim has made it past summary judgment. *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (granting summary judgment for defendant on VPPA claim); *Therrien v. Hearst Television, Inc.*, 2025 WL 1208535 (D. Mass. Apr. 25, 2025) (same).

16. Moreover, earlier this month, the Second Circuit held in an issue of first impression that a Facebook ID and URL string sent to Facebook were not "personally identifiable information" within the meaning of the VPPA. *See Solomon v. Flipps Media, Inc.*, --- F.4th ---, 2025 WL 1256641, at *11 (2d Cir. May 1, 2025). Those are among the identifiers Plaintiff alleges are at issue here. Compl. ¶¶ 27-28. To be sure, most district courts, including those in California, have come to the opposite conclusion. *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII."). And the Ninth Circuit has implied it agrees with that reasoning. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) ("A Facebook link … may very well readily enable an 'ordinary person' to identify an individual."). Still, it is unclear whether the pendulum may begin to swing in the other direction in the wake of *Solomon*.

17. In addition, to even get the case to class certification, the Parties would have to undergo significant motion practice and expensive, expansive, and technologically intensive discovery. And given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits as well as on class certification. Finally, even if Plaintiff prevailed on her VPPA claim at trial, there is no guarantee that Plaintiff or Class Members would be awarded full or statutory damages under the VPPA. *See Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1043 (9th Cir. 2024) (vacating award of statutory damages after class action trial).

18. Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory

damages in play it would argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.

19. Defendant is also represented by highly experienced counsel who have made clear that absent a settlement, they were prepared vigorously defense of this case, including by moving to dismiss, moving for summary judgment, and opposing class certification.

20. Plaintiff and Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

21. My firm undertook this representation on a wholly contingent basis recognizing that the risk of non-payment has been high throughout this litigation. There were substantial uncertainties in the viability of this case as a class action, as well as substantial uncertainties in the merits of the underlying claims, and the ability to collect on any judgment that might be obtained. Although we believed the case to be meritorious, a realistic assessment shows that the risks inherent in the resolution of the liability issues, protracted litigation in this action as well as the probable appeals process, are great.

22. Had we not resolved this matter through settlement, we would have vigorously prosecuted the case through class certification, summary judgment, trial, and appealed any determinations that may have been adverse to the Class's interests. We were therefore at great risk for non-payment. In addition, as described above, we have advanced expenses that would not have been reimbursed absent a successful result.

## II. BACKGROUND AND EXPERIENCE OF CLASS COUNSEL

23. Bursor & Fisher, P.A., is qualified and experienced in conducting class action litigation. A copy of the firm's resume is attached hereto as **Exhibit 1**.

24. In particular, my firm has extensive experience litigating class actions under the VPPA and other data privacy statutes. Bursor & Fisher certified the first

ever contested class certification in a VPPA case. *Jancik v. WebMD LLC*, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025). The firm has secured victories in novel areas of data privacy law at summary judgment, on appeal, and on the pleadings. *See, e.g., Boelter v. Hearst Commc'ns Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting novel motion for summary judgment for the named plaintiff in case brought under the Michigan analog of the VPPA); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022) (reversing district court and agreeing with plaintiff's interpretation of California Invasion of Privacy Act).

25. As a result of these efforts, we have been appointed class counsel and secured sizable relief for class members in a number of data privacy matters, including those brought under the VPPA and its state analogs. *See, e.g., Schreiber v. Mayo Foundation*, Case No. 2:22-cv-00188 (W.D. Mich.) ($52.5 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Edwards v. Hearst Communications, Inc.*, Case No. 1:15-cv-09279 (S.D.N.Y.) ($50 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Jackson v. Fandango Media, LLC*, Case No. 2023LA000631 (Ill. Cir. Ct. DuPage Cnty.) ($6 million class settlement to resolve claims for alleged violations of the VPPA); *Ambrose v. Boston Globe Media Partners, LLC*, Case No. 1:22-cv-10195 (D. Mass.) ($5 million class settlement to resolve claims for alleged violations of the VPPA); *Ruppel v. Consumers Union of United States, Inc.*, Case No. 7:16-cv-02444 (S.D.N.Y.) ($16.375 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 1:15-cv-05671 (S.D.N.Y.) ($13.75 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Kain v. The Economist Newspaper NA, Inc.*, Case No. 4:21-cv-11807 (E.D. Mich. Mar. 16 2023) ($9.5 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Taylor v. Trusted Media Brands, Inc.*, Case No. 7:16-cv-01812

(S.D.N.Y. Feb. 1, 2018) ($8.225 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA).

26. Moreover, my firm has served as trial counsel for class action plaintiffs in six jury trials and has won all six, with recoveries ranging from $21 million to $299 million. Most recently, in May 2019, we secured a jury verdict for over $267 million in a Telephone Consumer Protection Act ("TCPA") case in the Northern District of California. *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020). During the defendant's appeal of the verdict, the case settled for $75.6 million, the largest settlement in the history of the TCPA.

## III.  CLASS COUNSEL'S LODESTAR AND EXPENSES

### A.  Class Counsel's Attorneys' Fees And The Work Performed In This Matter

27. Throughout this matter, Class Counsel has performed the following work on behalf of the Class: (i) conducting an extensive pre-suit investigation into Defendant's data sharing practices, including commissioning a dynamic analysis of Defendant's Website; (ii) drafting the initial Complaint; (iii) reviewing information produced by Defendant in aid of settlement discussions; (iv) negotiating the Settlement at arm's-length with Defendant; (v) successfully moving for preliminary approval; and (vi) managing (continuing to manage) the dissemination of notice and the claims process.

28. Since the Court granted preliminary approval, Class Counsel has worked with the Settlement Administrator, Simpluris, Inc. ("Simpluris"), to carry out the Court-ordered notice plan. Specifically, Class Counsel helped compile and review the contents of the required notice to State Attorney Generals pursuant to 28 U.S.C. § 1715, reviewed the final claim and notice forms, and reviewed and tested the settlement website before it launched live.

29. Attached hereto as **Exhibit 2** are Class Counsel's detailed billing diaries for this matter, as well as a summary of the same. I have personally reviewed all of

Class Counsel's time entries associated with this case and have used billing judgment to ensure that duplicative and unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included. Class Counsel's time entries were regularly and contemporaneously recorded by myself and the other timekeepers pursuant to firm policy and have been maintained in the computerized records of Class Counsel.

30. Class Counsel undertook this matter on a contingency basis. Since Class Counsel began investigating this matter through May 5, 2025, Class Counsel has expended 124.1 hours in this case. Class Counsel's lodestar in this case, based on current billing rates, is $72,585.00. This represents a blended hourly rate of $584.89. A fee award of $250,000 would represent a multiplier of 3.44 over the base lodestar fee of $72,585.00.

31. In addition to the time enumerated above, I estimate that Class Counsel will incur an additional 25-50 hours of future work in connection with the preparation of Plaintiff's Motion for Final Approval, attending the Final Approval Hearing, coordinating with Simpluris, monitoring settlement administration, and responding to Class Member inquiries. At Class Counsel's blended hourly rate, these additional hours would push Class Counsel's lodestar to between $87,207.25 to $101,829.50 and decrease the requested multiplier to between 2.46 to 2.87.

32. Included within **Exhibit 2** is a chart setting forth the hourly rates charged for lawyers and staff at Class Counsel at the time the work was completed. Based on my knowledge and experience, the hourly rates charged by Class Counsel are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise. I have personal knowledge of the range of hourly rates typically charged by counsel in our field in New York, California, Florida, and elsewhere, both on a current basis and in the past. In determining Class Counsel's hourly rates from year to year, Bursor & Fisher's partners have consciously taken market rates into account and have aligned our rates with the market.

33.     Through my practice, I have become familiar with the non-contingent market rates charged by attorneys in New York, California, Florida, and elsewhere (Class Counsel's offices are in New York City, Walnut Creek, California, and Miami, Florida).  This familiarity has been obtained in several ways: (i) by litigating attorneys' fee applications; (ii) by discussing fees with other attorneys; (iii) by obtaining declarations regarding prevailing market rates filed by other attorneys seeking fees; and (iv) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorney's fees in the legal newspapers and treatises.

34.     The information I have gathered shows that Class Counsel's rates are in line with the non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable class action work.  In fact, comparable hourly rates have been found reasonable by various courts for reasonably comparable services, including:

(i)  *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, Case No. 15-md-02672-CRB, ECF No. 3053 (N.D. Cal. Mar. 17, 2017), approving partner rates up to $1,600, and associate rates up to $790.

(ii) *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 07-md-1827-SI, ECF No. 1827 (N.D. Cal. 2013), an antitrust class action in which the court found blended hourly rates of $1000, $950, $861, $825, $820, and $750 per hour reasonable for the lead class counsel.

(iii) *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. RG08366506, Order of Final Approval and Judgment filed November 8, 2012, a wage and hour class action, in which the court found the hourly rates of $785, $775, and $750 reasonable for the more senior class counsel.

(iv) *Luquetta v. The Regents of the Univ. of California*, San Francisco Superior Ct. Case No. CGC-05-443007, Order Granting Plaintiff's Motion for Common Fund Attorneys' Fees and Expenses,

        filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the hourly rates of $850, $785, $750, and $700 reasonable for plaintiffs' more experienced counsel.

    (v)  *Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012), a civil rights class action brought by pre-trial detainees, in which the court approved a lodestar-based, *inter alia*, on 2011 rates of $850 and $825 per hour.

    (vi)  *Holloway et. al. v. Best Buy Co., Inc.*, Case No. 05-cv-5056-PJH (N.D. Cal. 2011) (Order dated November 9, 2011), a class action alleging that Best Buy discriminated against female, African American and Latino employees by denying them promotions and lucrative sales positions, in which the court approved lodestar-based rates of up to $825 per hour.

    (vii)  *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), adopted by Order Accepting Report and Recommendation filed February 2, 2011, a class action in which the court found reasonable 2010 hourly rates of up to $835 per hour.

    (viii)  *Qualcomm, Inc. v. Broadcom, Inc.*, Case No. 05-cv-1958-B, 2008 WL 2705161 (S.D. Cal. 2008), in which the court found the 2007 hourly rates requested by Wilmer Cutler, Pickering, Hale & Dorr LLP reasonable; those rates ranged from $45 to $300 for staff and paralegals, from $275 to $505 for associates and counsel, and from $435 to $850 for partners.

35.   The reasonableness of Class Counsel's hourly rates is also supported by several surveys of legal rates, including the following:

    (i)  In an article entitled "Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder,'" written by Roy Strom and published by Bloomberg Law on June 9, 2022, the author describes how Big Law firms have crossed the $2,000-per hour rate. The article also notes that law firm rates have been increasing by just under 3% per year. A true and

              correct copy of this article is attached hereto as **Exhibit 3**.

(ii) The CounselLink Enterprise Management Trends Report for June 2022 states that the median partner rate in New York was $1,030. The report also notes that median partner rates have grown by 4.0% in San Francisco and 4.3% in New York. A true and correct copy of this article is attached hereto as **Exhibit 4**.

(iii) In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 or more revealed in public filings and major surveys. The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an average rate between $879 and $882 per hour. A true and correct copy of this article is attached hereto as **Exhibit 5**.

(iv) In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011. A true and correct copy of that article is attached hereto as **Exhibit 6**. That article confirms that the rates charged by experienced and well-qualified attorneys have continued to rise over this five-year period, particularly in large urban areas like the San Francisco Bay Area. It also shows, for example that the top quartile of lawyers bill at an average of "just under $900 per hour."

(v) Similarly, on February 25, 2011, the Wall Street Journal published an on-line article entitled "Top Billers." A true and correct copy of that article is attached hereto as **Exhibit 7**. That article listed the 2010 and/or 2009 hourly rates for more than 125 attorneys, in a variety of practice areas and cases, who charged $1,000 per hour or more. Indeed, the article specifically lists *eleven* (11) Gibson Dunn & Crutcher attorneys billing at $1,000 per hour or more.

DECLARATION OF MAX S. ROBERTS  
CASE NO. 5:24-CV-2058-KK-SP

11

(vi) On February 22, 2011, the ALM's Daily Report listed the 2006-2009 hourly rates of numerous San Francisco attorneys. A true and correct copy of that article is attached hereto as **Exhibit 8**. Even though rates have increased significantly since that time, Class Counsel's rates are well within the range of rates shown in this survey.

(vii) The Westlaw CourtExpress Legal Billing Reports for May, August, and December 2009 (attached hereto as **Exhibit 9**) show that as far back as 2009, attorneys with as little as 19 years of experience were charging $800 per hour or more, and that the rates requested here are well within the range of those reported. Again, current rates are significantly higher.

(viii) The National Law Journal's December 2010, nationwide sampling of law firm billing rates (attached hereto as **Exhibit 10**) lists 32 firms whose highest rate was $800 per hour or more, eleven firms whose highest rate was $900 per hour or more, and three firms whose highest rate was $1,000 per hour or more.

(ix) On December 16, 2009, The American Lawyer published an online article entitled "Bankruptcy Rates Top $1,000 in 2008-2009." That article is attached hereto as **Exhibit 11**. In addition to reporting that several attorneys had charged rates of $1,000 or more in bankruptcy filings in Delaware and the Southern District of New York, the article also listed 18 firms that charged median partner rates of from $625 to $980 per hour.

(x) According to the National Law Journal's 2014 Law Firm Billing Survey, law firms with their largest office in New York have average partner and associate billing rates of $882 and $520, respectively. Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore; Nominal Billing Levels Rise, But Discounts Ease Blow*, National Law Journal, Jan. 13, 2014. The survey also shows that it is common for legal fees for partners in New York firms to exceed $1,000 an hour. *Id.* A true and correct

copy of this survey is attached hereto as **Exhibit 12**.

36. Class Counsel's rates have been deemed reasonable by Courts across the country, including in New York, California, Michigan, Illinois, Missouri, and New Jersey for example:

(i) *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (concluding that "blended rate of $634.48 is within the reasonable range of rates").

(ii) *Zakskorn v. American Honda Motor Co.*, 2015 WL 3622990, at *13-15 (E.D. Cal. June 9, 2015) (approving a fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and $450 per hour for associates).

(iii) *In re Haier Freezer Consumer Litig.*, Case No. C11-02911 EJD, N.D. Cal. (Oct. 25, 2013 Final Judgment And *Order* Granting Plaintiffs' Motion For Final Approval Of Class Action Settlement And For Award Of Attorneys' Fees, Costs And Incentive Awards).

(iv) *Russett v. Northwestern Mutual Life Insurance Co.*, Case No. 19-cv-07414, S.D.N.Y. (Oct. 6, 2020 Final Judgment And Order Of Dismissal With Prejudice).

(v) *Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279, S.D.N.Y. (Apr. 24, 2019 Final Judgment *And* Order Of Dismissal With Prejudice).

(vi) *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812, S.D.N.Y. (Feb. 1, 2018 Final Judgment And Order Of Dismissal With Prejudice).

37. No court has ever cut Class Counsel's fee application by a single dollar on the basis that our hourly rates were not reasonable.

**B.    Class Counsel's Costs And Expenses Incurred In This Matter**

38. To date, Class Counsel has expended $7,145.92 in out-of-pocket costs and expenses in connection with the prosecution of this case. Attached as **Exhibit**

**13** is an itemized list of those costs and expenses. These costs and expenses are reflected in the records of Class Counsel and were necessary to prosecute this litigation. Cost and expense items are billed separately, and such charges are not duplicated in Class Counsel's billing rates.

39. These expenses include court fees, research fees—including the dynamic analysis that is at the foundation of the allegations in this lawsuit—service fees, and travel expenses related to the preliminary approval hearing (which was taken under submission after the expenses were incurred).

## IV. PLAINTIFF'S ROLE IN THIS LITIGATION

40. I am of the opinion that Ms. Saarloos's active involvement in this case was critical to its ultimate resolution. She took her role as class representative seriously, devoting significant amounts of time and effort to protecting the interests of the class. Without her willingness to assume the risks and responsibilities of serving as class representative, I do not believe such a strong result could have been achieved.

41. Ms. Saarloos equipped Class Counsel with critical details regarding her experiences with Defendant. She assisted Class Counsel in investigating her claims, detailed her experiences as a user of CC+ and the Website, supplied supporting documentation, aided in drafting the Complaint, and frequently communicated with Class Counsel regarding settlement negotiations and strategy. Ms. Saarloos was prepared to testify at deposition and trial, if necessary. And she was actively consulted during the settlement process.

42. In short, Ms. Saarloos assisted Class Counsel in pursuing this action on behalf of the Class, and her involvement in this case has been nothing short of essential to securing the Settlement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 22, 2025 in New York, New York.

*/s/ Max S. Roberts*

Max S. Roberts